STATE OF NEBRASKA, APPELLEE, v. CHARLES ROY RANSOM, APPELLANT.

153 N. W. 2d 916

Filed November 3, 1967. No. 36622.

John O. Anderson, for appellant.

Clarence A. H. Meyer, Attorney General, and Homer G. Hamilton, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ.

WHITE, C. J.

Defendant, 21 years of age, was sentenced to 2 years imprisonment on a jury conviction for burglary and now appeals, asserting the improper admission of a confession in evidence, error in refusing to permit cross-examination of the sheriff, and failure of proof as to the location and ownership of the burglarized schoolhouse.

Defendant argues at length that the requirements of Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A. L. R. 3d 974, had not been met and therefore the confession is inadmissible. The requirements for the admission of a confession or statement secured from a defendant during in-custody interrogation are comprehensively stated in Miranda v. Arizona, *supra*, as follows: "* * * the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can

be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him."

The trial court held a hearing on the admissibility of the confession, outside the presence of the jury, and strictly in conformity with the constitutional requirements set out in Jackson v. Denno, 378 U. S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908, 1 A. L. R. 3d 1205; State v. Longmore, 178 Neb. 509, 134 N. W. 2d 66. The record reveals, without dispute, that prior to the interrogation concerning the crime and constituting the confession, Freddie Marsh, the sheriff of Box Butte County, Nebraska, had a series of questions and statements written on a sheet of paper which were read to the defendant verbatim and to each one of which he separately answered as follows:

(1) "I would like to advise you that I am Freddie Marsh, Sheriff of Box Butte County, Nebraska. Do you understand that? Yes."

(2) "You have a right to remain silent and not make any statements or answer any of my questions. Do you understand that? Yes."

(3) "Any thing that you may say can and will be used against you in Court. Do you understand that? Yes."

(4) "You have the right to consult with a lawyer and have the lawyer yith you during the questioning? Do you understand that? Yes."

(5) "If you cannot afford a lawyer the Court will

appoint one to represent you. Do you fully understand that? Yes."

(6) "Knowing your rights in this matter, are you willing to make a statement to me now? Yes."

(7) "Do you willingly waive and do without the services of an Attorney at this time? Yes."

After the oral interrogation, on December 6, 1966, the sheriff took the defendant's written statement or confession contained in exhibit 1. Preceding this written statement or confession in exhibit 1, the same questions and answers set out above were recited in writing and each one of the above answers was separately initialed by the defendant. Besides the above statements and questions and answers, the record establishes without dispute that the sheriff informed the defendant that he had a right to stop when he wanted to during the questioning and after it had started.

Defendant's contentions are refuted by the undisputed evidence in this record. A comparison of the requirements set out in Miranda and the questions and answers admittedly given by the defendant leaves no room for dispute that there was a voluntary and intelligent waiver of his privilege against self-incrimination. We shall not attempt to answer all of the facets of the defendant's argument in this respect. He argued that he was not aware of his right to counsel during the interrogation and that the warning did not advise him as to when he could get legal services. But warning No. 4 in the above questions and answers clearly told him that he had a right to consult a lawyer during the questioning and question No. 7 explicitly waived his right to do without the services of an attorney "at this time." The contention is made that he was not afforded an opportunity to exercise his right to remain silent throughout the interrogation. The defendant was advised that he had a right to remain silent and to not make *any* statements or answer *any* questions propounded to him; that he had a right to consult with a lawyer *during* the ques-

tioning; and the defendant himself testified that the sheriff told him that he could stop any time that he wanted to.

We come to the conclusion that the defendant knowingly and intelligently waived his rights and agreed to answer questions and make a statement within the meaning of Miranda.

Defendant also contends that the confession was not otherwise voluntary. The rule is that where the evidence as to what occurred immediately prior to and at the time of the making of a confession shows that it was freely and voluntarily made and excludes the hypothesis of improper inducements or threats, the confession is voluntary and may be received in evidence. State v. Erving, 180 Neb. 824, 146 N. W. 2d 216. The defendant was 21 years of age, had the equivalent (except for an English course) of a high school education, had previously been convicted of a felony and served time in the Nebraska Penal and Correctional Complex after a trial in which he was represented by an attorney, and his testimony in this case reveals a memory of and an intelligent understanding of all of the proceedings and incidents surrounding the taking of his statement and confession. The record reveals no improper inducements or threats, nor is there any question of any coercive physical or mental abuse presented. The defendant was returned, after waiving extradition, to Alliance, Nebraska, late in the afternoon of December 5, 1966, and his statement and confession were taken about 3 o'clock the next afternoon on December 6, 1966. There is no evidence of any improper treatment, inducements, threats, or physical or mental abuse of the defendant during this period of time. Defendant's contention in this respect seems to be that the fact that he was in jail, that law enforcement officers were present at the time he was interrogated, and that they were interrogating him about the commission of this specific burglary, was sufficient to make the statements and con-

fession involuntary. If this were true, no in-custody interrogation by law enforcement officers would be voluntary. There is no merit to this contention.

Defendant contends that his cross-examination of the sheriff was too restricted in that he was not allowed to show that statements made by other parties implicating him as an accomplice were obtained by trickery, cajolery, and other illegal procedures. We think this evidence is clearly too remote. It was outside the scope of direct examination and had nothing whatever to do with the procedure used to obtain the statements or confession in this case from this defendant and whether or not his confession and statements were voluntary. We further note that the evidence in this case establishes that there were no promises, coercion uses, or threats made to this defendant and the defendant himself so testified. This court long ago established the general rule that in criminal cases it is not error to exclude evidence which is not substantive proof of any fact relative to the issues in the case. Scherer v. State, 168 Neb. 127, 95 N. W. 2d 329; Burlingim v. State, 61 Neb. 276, 85 N. W. 76.

The prosecution here was for burglary of a schoolhouse close to Alliance, Nebraska. The evidence clearly shows that the schoolhouse was located in Box Butte County, Nebraska, and was located approximately 1½ miles east of Alliance on a state highway; and that there were no other schoolhouses within 3 or 4 miles. This was clearly sufficient to establish the venue of the offense. The fact that it was not established in the exact words recited in the information is not important. The location was established as being in Box Butte County and sufficiently definite to advise the defendant of the place and location of the alleged offense. See Gates v. State, 160 Neb. 722, 71 N. W. 2d 460. An allegation of ownership of a building is not necessary to allege the offense of burglary as long as the building is sufficiently identified for the purpose of showing that the property involved is

not the property of the accused, and showing that the accused did not have the right to enter the premises. Liakas v. State, 161 Neb. 130, 72 N. W. 2d 677; Sedlacek v. State, 147 Neb. 834, 25 N. W. 2d 533, 169 A. L. R. 868.

It is contended that the sentence of 2 years is excessive. The maximum sentence under the statute is for 10 years. The defendant had previously been convicted of a felony. Defendant having received only $3.10 of the $6.20 of the loot taken contends that his sentence should be reduced because the enterprise was not as lucrative as expected. This is a burglary case and we know of no rule which limits the seriousness of the offense in proportion to the amount of property taken. A sentence imposed within the limits of the statute will not be disturbed unless there appears to be an abuse of discretion. State v. Redden, 181 Neb. 423, 149 N. W. 2d 98; Salyers v. State, 159 Neb. 235, 66 N. W. 2d 576.

The judgment of the district court is correct and is affirmed.

AFFIRMED.