STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v. ELLIS E. JONES, DEFENDANT-APPELLANT.

Argued February 3, 1969—Decided April 7, 1969.

*Mr. Joseph F. Walsh* argued the cause for appellant.

*Mr. Matthew J. Scola,* Assistant Prosecutor, argued the cause for respondent (*Mr. Joseph P. Lordi,* County Prosecutor of Essex County, attorney).

The opinion of the court was delivered by

JACOBS, J. The defendant Ellis E. Jones was indicted for murder and, after a joint trial with George David Barnett, was convicted of murder in the second degree. He was sentenced to serve a term of 12–16 years and appealed to this Court as of right under former R. R. 1:2–1(c).

On December 3, 1966 Barnett had an argument and fight in Newark with his cousin Charles Featherstone. Barnett then drove to his home in Westfield, changed his clothes, met the defendant Jones, and returned with Jones and others to Newark. Barnett and Jones then went to 249 Bruce Street where the Featherstone apartment was located. Jones admitted, both in his statement to the police and in his testimony at the trial, that he had a knife in his possession. Barnett stated that he did not have a knife or any other weapon in his possession. Barnett and Jones met Charles on the stairway of the apartment and, after some words, Charles was stabbed and died of his wounds. On December 4th, Barnett was arrested and told the police about his earlier argument and fight with Charles and their later meeting on the stairway at which time he saw Jones lunge at Charles with a knife. Jones was arrested during the afternoon of December 5th and told the police that he was with Barnett when they met Charles and that he had lunged or swung at Charles with his knife but thought he had missed. He told the police where the knife was located and they later obtained it.

Jones was first picked up by the Westfield police and was taken to the Westfield Police Headquarters. There Lieutenant Bell advised him of his constitutional rights in accordance with *Miranda v. Arizona*, 384 *U. S.* 436, 86 *S. Ct.* 1602, 16 *L. Ed. 2d* 694 (1966). The Lieutenant did not plan to take any statement from Jones, and in fact took none, but he had been taught "that defendants should be advised of their rights as soon as possible after the arrest." At about 5:30 P. M. of the afternoon of December 5th, Newark police officers reached Westfield and took charge of

Jones. At about 6 P. M. the officers arrived with Jones at Newark Police Headquarters and Jones was again advised of his constitutional rights. He signed a preamble which embodied all of the warnings contemplated by *Miranda* and in which he stated that he was "willing to answer questions and make a statement" and did "not want a lawyer now". He made a telephone call and then signed a statement in which he said he lunged at Charles "with the knife" and that when he later told Barnett that he "had missed", Barnett replied "that's alright"—"he worked with me anyway". The defendant was brought before a magistrate during the morning of December 6th. At the trial, the court took testimony out of the presence of the jury and found that Jones' statement was voluntary and was given by him after he had been fully advised of his constitutional rights under *Miranda* and had freely and understandingly waived his rights including his right to counsel and his right to remain silent.

 The defendant does not and could not successfully attack the sufficiency of the evidence establishing his guilt or the validity of the court's finding that his statement was voluntary. He does, however, advance two specific points of alleged error which he says call for a reversal of his conviction. In his first point he contends that *Miranda* requires that we adopt the *McNabb-Mallory* rule (*McNabb v. United States,* 318 *U. S.* 332, 63 *S. Ct.* 608, 87 *L. Ed.* 819 (1943) ; *Mallory v. United States,* 354 *U. S.* 449, 77 *S. Ct.* 1356, 1 *L. Ed. 2d* 1479 (1957)) which in federal criminal proceedings has dictated the exclusion of statements obtained from defendants who were not brought "without unnecessary delay" before the nearest available commissioner or other committing official. See Rule 5(a), *Federal Rules of Criminal Procedure.* This Court has repeatedly declined to adopt the *McNabb-Mallory* rule, although it has held that any unnecessary delay in taking the accused before a magistrate is a proper element in the consideration of the issue of voluntariness. See *State v. Jackson,* 43 *N. J.* 148 (1964):

The defendant urges that notwithstanding any factual showing of voluntariness, a confession should be excluded when obtained from a defendant illegally detained in that he has been arrested but has not been taken without unnecessary delay before a magistrate as directed by *R. R.* 3:2–3(a). In *State v. Pierce*, 4 *N. J.* 252 (1950), it was held that while a confession obtained during illegal detention would be carefully scrutinized (and would not be admitted unless "it convincingly appears that it was in fact and in truth voluntarily made" (4 *N. J.*, at *p.* 264)), it would not be considered inadmissible *per se. Pierce* was followed in *State v. Wise*, 19 *N. J.* 59, 84 (1955), and *State v. LaPierre, supra*, 39 *N. J.*, at *p.* 171, which took cognizance of the fact that, in the exercise of its supervisory powers over the administration of criminal justice in the federal courts, the Supreme Court had reached an opposite result. See *McNabb v. United States*, 318 *U. S.* 332, 63 *S. Ct.* 608, 87 *L. Ed.* 819 (1943); *Mallory v. United States*, 354 *U. S.* 449, 77 *S. Ct.* 1356, 1 *L. Ed.* 2d 1479 (1957). In *LaPierre*, the defendant's request that New Jersey abandon its stand in favor of *McNabb-Mallory* was expressly rejected. That case was decided only last year and, there being no definitive Supreme Court ruling that *McNabb-Mallory* has attained constitutional dimensions, *LaPierre* will not now be departed from. 43 *N. J.*, at 167.

See also *State v. Hodgson,* 44 *N. J.* 151, 157 (1965), *certiorari* denied, 384 *U. S.* 1021, 86 *S. Ct.* 1929, 16 *L. Ed.* *2d* 1022 (1966); *State v. Ordog,* 45 *N. J.* 347, 362 (1965), *certiorari* denied, 384 *U. S.* 1022, 86 *S. Ct.* 1942, 16 *L. Ed.* *2d* 1025 (1966); *State v. Taylor,* 46 *N. J.* 316, 328, *certiorari* denied, 385 *U. S.* 855, 87 *S. Ct.* 103, 17 *L. Ed. 2d* 83 (1966); *State v. Seefeldt,* 51 *N. J.* 472, 486 (1968).

*Seefeldt* was decided by us almost two years after *Miranda;* we there noted that although delay in bringing the defendant before a judge was a factor to be considered, it did not "of itself render an otherwise voluntary confession inadmissible." 51 *N. J.,* at 486. Recent state decisions elsewhere have followed a similar course. See, *e. g., Paschal v. State,* 243 *Ark.* 329, 420 *S. W. 2d* 73 (1967); *Priest v. State, Del.,* 227 *A. 2d* 576 (1967); *State v. Minor,* 78 *N. M.* 680, 437 *P. 2d* 141 (1968); *People v. Carter,* 39 *Ill. 2d* 31, 233 *N. E. 2d* 393, 398 (1968); *Commonwealth ex rel. Butler v. Rundle,* 429 *Pa.* 141, 239 *A. 2d* 426, 433 (1968); *Hartley v. State,* 4 *Md. App.* 450, 243 *A. 2d* 665, 671 (*Ct. Spec. App.* 1968).

In *State v. Coleman*, 46 *N. J.* 16 (1965), *certiorari* denied, 383 *U. S.* 950, 86 *S. Ct.* 1210, 16 *L. Ed.* 2d 212 (1966), we pointed out that although there was widespread belief "in academic and other circles" that the Supreme Court would "in due course eliminate all confessions by unrepresented suspects in custody", it had not yet done so. We also remarked that if the Supreme Court chose to take that step, it would undoubtedly avail itself of "unequivocal language". 46 *N. J.,* at 34. When shortly thereafter *Miranda* was handed down, it did not take that step but instead permitted the continued use of confessions by unrepresented defendants who, after being sufficiently advised as to their constitutional rights, affirmatively waive them and make voluntary statements. See *State v. Yough,* 49 *N. J.* 587, 597 (1967). Nothing in *Miranda* suggests that a statement made by a defendant who was so advised and so waived his rights must nonetheless be excluded by the state court if the defendant was not brought before a magistrate promptly after his arrest.

The defendant seeks comfort from a single reference in *Miranda* to *McNabb-Mallory.* 384 *U. S.,* at 463, 86 *S. Ct.* 1602, 16 *L. Ed.* 2d, at 717. But in that reference Chief Justice Warren simply stated that because of *McNabb-Mallory* the federal courts have had little occasion to reach the constitutional issues in dealing with federal interrogations. The Chief Justice then proceeded to point out that the privilege against self-incrimination was applicable in state proceedings, as well as in federal proceedings, and that a person in custody of the state was entitled to his constitutional protections including warnings before questioning "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." 384 *U. S.,* at 479, 86 *S. Ct.,* at 1630, 16 *L. Ed.* 2d, at 726. After the warnings are given to him he "may knowingly and intelligently waive these rights and agree to answer questions or make a statement." 384 *U. S.,* at 479,

*86 S. Ct.,* at 1630, 16 *L. Ed. 2d,* at 726. Surely if the warnings and the waiver are legally and factually sufficient, the ensuing statement will, insofar as *Miranda* is concerned, be constitutionally admissible in the state proceeding without regard to any related delay in bringing the defendant before a local magistrate. See 8 *Moore's Federal Practive* § 5.02 (1968) ; Sobel, *The New Confession Standards* 15 (1966) ; *cf.* Warden, "Miranda—Some History, Some Observations, and Some Questions", 20 *Vand. L. Rev.* 39, 58–59 (1966) ; Elsen and Rosett, "Protections For the Suspect Under Miranda v. Arizona," 67 *Colum. L. Rev.* 645, 660 (1967) ; *George, A New Look At Confessions* 90 (1967) ; Comment, "Miranda v. State of Arizona—The Fifth Amendment Enters the Police Station," 16 *DePaul L. Rev.* 138, 142 (1966).

█ In his second point, the defendant contends that "the magistrate, not the police officer, is the proper person to advise an apprehended person of his rights." *Miranda* clearly contemplates that the original warnings will, as here, be given by the police. See 384 *U. S.,* at 474, 86 *S. Ct.,* at 1628, 16 *L. Ed. 2d,* at 724 where the Supreme Court noted that "if police propose to interrogate a person they must make known to him that he is entitled to a lawyer and that if he cannot afford one, a lawyer will be provided for him prior to any interrogation." See also *Orozco v. Texas,* 394 *U. S.* ——, 89 *S. Ct.* 1095, 22 *L. Ed. 2d* 311 (1969). The recent decisions in our State as well as elsewhere all recognize that the police may appropriately give the *Miranda* warnings. See *State v. Magee,* 52 *N. J.* 352, 369 (1968) ; *State v. Seefeldt, supra,* 51 *N. J.,* at 483; *State v. Yough, supra,* 49 *N. J.,* at 591; *People v. Hill,* 39 *Ill. 2d* 125, 233 *N. E. 2d* 367, 369, *certiorari* denied, 392 *U. S.* 936, 88 *S. Ct.* 2305, 20 *L. Ed. 2d* 1394 (1968) ; *Robinson v. State,* 3 *Md. App.* 666, 240 *A. 2d* 638, 643 *(Ct. Spec. App.* 1968) ; *Heard v. State,* 244 *Ark.* 44, 424 *S. W. 2d* 179 (1968) ; *Commonwealth v. Fisher, Mass.,* 238 *N. E. 2d* 525, 528 (1968) ; *People v. Lewis,* —— *Cal. App. 2d* ——, 68 *Cal. Rptr.* 790, 792 (1968) ; *State v. Ransom,* 182 *Neb.* 243, 153 *N. W. 2d*

916, 918 (1967). Indeed the federal courts have recognized that, even in a federal proceeding governed by *McNabb-Mallory,* the police or enforcement officials may give the warnings and take the statement on waiver shortly after the arrest. See *Miller v. United States,* 396 *F. 2d.* 492, 496 (*8th Cir.* 1968); *cf. United States v. Taylor,* 374 *F. 2d* 753, 757 (*7th Cir.* 1967); 18 *U. S. C. A.* § 3501 (*Supp.* 1969).

If the contentions advanced by the defendant were accepted, no statement could be taken from a person in custody prior to his appearance before a magistrate charged with giving him his constitutional warnings. The defendant notes that that course would add to individual safeguards and tend to reduce credibility questions as to whether the warnings were in fact given. But it would represent a deliberate departure from established investigatory police routines and might tend to impair the fair and effective enforcement of the law. No Supreme Court decision compels it constitutionally and nothing has been presented which would at this time persuade us to prescribe it on our own. We find no error in the proceedings below and the judgment of conviction appealed from is accordingly:

Affirmed.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.