STATE OF NEBRASKA, APPELLEE, V. LAVELL DEAN FLYE, APPELLANT.
513 N.W.2d 526

Filed April 1, 1994.    No. S-92-808.

Dorothy A. Walker, of Mowbray & Walker, P.C., for appellant.

Don Stenberg, Attorney General, and Marilyn B. Hutchinson for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ.

CAPORALE, J.

## I. STATEMENT OF CASE

In this criminal proceeding the district court, pursuant to verdict, adjudged the defendant-appellant, Lavell Dean Flye, guilty of criminal mischief, in violation of Neb. Rev. Stat. § 28-519 (Reissue 1989); found him to be a habitual criminal, as defined in Neb. Rev. Stat. § 29-2221 (Reissue 1989); and sentenced him to imprisonment for a period of 10 years. In appealing to the Nebraska Court of Appeals, Flye asserted that the district court erred in (1) instructing the jury as to the meaning of "pecuniary loss," (2) finding the evidence sufficient to support the verdict, (3) failing to find the habitual criminal charge to be the result of prosecutorial vindictiveness, and (4) refusing to place him on probation. The Court of Appeals determined the district court's definition of pecuniary loss to have been prejudicially erroneous and thus vacated the sentence and remanded the cause for a new trial solely on the issue of the amount of pecuniary loss Flye caused. *State v. Flye*, 2 Neb. App. 96, 507 N.W.2d 493 (1993). We granted the plaintiff-appellee State's petition for further review and now reverse the judgment of the Court of Appeals and remand the cause to that court, directing that it reinstate and affirm the judgment of the district court.

## II. FACTS

While in detention awaiting trial on charges of burglary, a Class III felony, Neb. Rev. Stat. § 28-507 (Reissue 1989), and first degree sexual assault, a Class II felony, Neb. Rev. Stat. § 28-319 (Reissue 1989), Flye was charged with criminal mischief as the result of vandalizing his jail cell, thereby causing a pecuniary loss in excess of $300, a Class IV felony, § 28-519. Later, and while still incarcerated, Flye was charged with second degree nonsexual assault, also a Class IV felony, Neb. Rev. Stat. § 28-309 (Reissue 1989).

The State then offered to allow Flye to plead guilty to the burglary charge in exchange for dismissing the sexual assault charge and dismissing either the criminal mischief or the

nonsexual assault charge in exchange for Flye's plea to the other. Flye rejected the State's offer, but proposed pleading to two Class IV felonies in exchange for dismissal of all the other charges. Flye's counteroffer was rejected by the State.

On the subsequent date scheduled for preliminary hearings on the criminal mischief and nonsexual assault charges, the State offered to permit Flye to plead to the burglary charge and one misdemeanor in exchange for the dismissal of all other charges. The State advised Flye that if he went to trial on the sexual assault and burglary charges, he would be charged as a habitual criminal on the pending criminal mischief and nonsexual assault charges. Later that same day, the State advised Flye that if he proceeded with the preliminary hearings in the criminal mischief and nonsexual assault charges, he would be charged as a habitual criminal on all of the pending felony charges. The preliminary hearings on the criminal mischief and nonsexual assault charges were continued to a future date in order to allow time for Flye to respond. When Flye did not respond by that date, the preliminary hearings on the criminal mischief and nonsexual assault charges were rescheduled.

After Flye rejected the State's plea offer, the State amended the information in the sexual assault and burglary charges to allege that Flye is a habitual criminal. A jury later acquitted Flye of both charges.

The next day, Flye offered to plead to Class I misdemeanors in the criminal mischief and nonsexual assault charges. The State rejected Flye's offer and informed him that he would be charged as a habitual criminal in both the criminal mischief and nonsexual assault charges regardless of whether he had a preliminary hearing. Flye then offered to waive the preliminary hearing and plead to one Class IV felony and one Class I misdemeanor. The State rejected Flye's offer and informed him that he would have to plead to one felony charge as a habitual criminal or go to trial on two felony charges as a habitual criminal.

The State subsequently filed informations charging Flye with second degree assault and criminal mischief and with being a habitual criminal.

Prior to trial on the criminal mischief charge, Flye filed a plea in abatement, alleging that the filing of the habitual criminal charge was an act of prosecutorial vindictiveness intended to punish him for successfully exercising his right to a jury trial on the prior sexual assault and burglary charges.

The district court denied Flye's plea in abatement. In finding Flye guilty, the jury fixed the amount of pecuniary loss value at $1,147. The district court later determined that Flye was a habitual criminal.

## III. ANALYSIS

### 1. PECUNIARY LOSS INSTRUCTION

In the first assignment of error, Flye asserts that the district court erroneously instructed the jury as to what constitutes pecuniary loss and that the error prejudiced him.

We note at the outset that Flye did not object to the instruction; on the contrary, at the instruction conference, he affirmatively told the district court that he had no objection to its proposed instructions. Absent plain error indicative of a probable miscarriage of justice, the failure to object to a jury instruction after it has been submitted for review precludes raising an objection on appeal. *State v. Myers*, 244 Neb. 905, 510 N.W.2d 58 (1994); *State v. Drinkwalter*, 242 Neb. 40, 493 N.W.2d 319 (1992); *State v. Lohman*, 237 Neb. 503, 466 N.W.2d 534 (1991).

However, an appellate court always reserves the right to note plain error which was not complained of at trial or on appeal but is plainly evident from the record, and which is of such a nature that to leave it uncorrected would result in damage to the integrity, reputation, or fairness of the judicial process. *Myers, supra*; Neb. Rev. Stat. § 25-1919 (Cum. Supp. 1992). Thus, the question is whether the district court's definition of pecuniary loss constituted plain error such as to prejudice Flye.

The defendant in *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435 (1989), was convicted of criminal mischief for intentionally driving his automobile into another's pickup truck. A repairman testified that the fair and reasonable cost of repairing the damage to the truck was $595.94; no evidence of the predamage market value of the truck was adduced. Arguing

that pecuniary loss for purposes of the criminal mischief statute should be determined by the civil rule measuring damage to personal property, i.e., the lesser of the cost of repair or replacement, Pierce objected to any instruction which did not refer to the predamage market value of the truck.

The trial court in *Pierce* nonetheless instructed the jury that pecuniary loss meant the " 'loss in the form of money, property, commercial interest, or anything else, the primary significance of which is economic loss.' " *Id.* at 970, 439 N.W.2d at 439. Recognizing that there is no universal and comprehensive formula or method of determining the extent of pecuniary loss for the purposes of the criminal mischief statute, we rejected use of the civil damages rule and defined pecuniary loss with respect to criminal mischief as being the "monetary loss suffered by another as the result of the defendant's conduct which constitutes criminal mischief under § 28-519." *Id.* at 975, 439 N.W.2d at 442. Concluding that the *Pierce* instruction did not conform with this definition and "permitted the jury to speculate about various losses, including a loss of a commercial interest 'or anything else' which involved 'economic loss,' " we held the instruction to have been "incomplete and misleading" and that, as such, it constituted "prejudicial error." *Id.* at 976, 439 N.W.2d at 443.

While the district court's definition of pecuniary loss in this case is the same as was the definition used by the trial court in *Pierce*, the circumstances in this case are quite different. The *Pierce* record did not disclose what the jury found the pecuniary loss to have been. Here, not only does the record reveal that figure, it establishes the figure to be consistent with the evidence presented by the State as to the cost of repairing or replacing the broken fixtures in the jail cell Flye damaged. Thus, although, in light of our holding in *Pierce*, the district court should have used an instruction which followed the definition of pecuniary loss set out in that opinion, it is clear that the jury was not misled by the instruction.

In an appeal based on the claim of an erroneous instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Messersmith*, 238

Neb. 924, 473 N.W.2d 83 (1991); *State v. Jasper*, 237 Neb. 754, 467 N.W.2d 855 (1991); *State v. Harney*, 237 Neb. 512, 466 N.W.2d 540 (1991).

Under the circumstances, Flye was not prejudiced by the erroneous instruction; thus, there is no merit to the first assignment of error.

## 2. SUFFICIENCY OF EVIDENCE

In the second assignment of error, Flye argues that the evidence is insufficient to support the verdict in that it (a) is at best speculative as to the extent of the pecuniary loss and (b) does not establish who owned the property which was damaged.

### (a) Pecuniary Loss

Section 28-519 provides, in relevant part: "(1) A person commits criminal mischief if he or she: (a) Damages property of another intentionally or recklessly . . . . (2) Criminal mischief is a Class IV felony if the actor intentionally causes pecuniary loss in excess of three hundred dollars . . . ."

Two witnesses testified with respect to the amount of the pecuniary loss, which is not an element of the criminal offense but determines the grade of the offense and relates to the punishment which may be imposed. *State v. Pierce*, 231 Neb. 966, 439 N.W.2d 435 (1989). A project manager for one of the contractors helping build the jail testified as to the costs of each component part involved in repairing the damaged cell. He estimated the replacement cost for the security shelf at $138 plus labor cost of $36 for installation and the replacement cost for the stainless steel mirror at $45 plus $50 for epoxy caulk and an additional $144 for labor. In addition, some damaged concrete blocks would have to be replaced and painted at a cost of $250. The vice president of the electrical contractor for the jail estimated that the cost to replace the light fixture would total $484. The evidence thus fully supports the jury's finding concerning the pecuniary loss caused.

### (b) Ownership

Next, Flye urges that there is no competent evidence concerning the ownership of the damaged property and that

such lack constitutes a failure to prove the crime charged. However, the specific ownership of property is not an essential element of criminal mischief and is immaterial except to identify the property in question as not that of the accused. See, *State v. Ransom*, 182 Neb. 243, 153 N.W.2d 916 (1967) (proof of specific ownership of building involved in burglary is not essential element of offense, and allegation of ownership is immaterial except for purpose of identifying property involved as not property of accused); *Liakas v. State*, 161 Neb. 130, 72 N.W.2d 677 (1955), *cert. denied* 351 U.S. 924, 76 S. Ct. 780, 100 L. Ed. 1454 (1956); *Sedlacek v. State*, 147 Neb. 834, 25 N.W.2d 533 (1946).

Moreover, while there was no direct testimony of ownership, the record supports an inference that Flye did not own the property he damaged.

Accordingly, neither is there any merit to the second assignment of error.

### 3. PROSECUTORIAL VINDICTIVENESS

In the third assignment of error, Flye complains of the district court's failure to find that he was unlawfully charged with being a habitual criminal as a result of prosecutorial vindictiveness. More specifically, Flye argues that his due process rights were violated by the State's addition of the habitual criminal allegation after Flye was found not guilty of sexual assault and burglary.

The U.S. Supreme Court first articulated in *North Carolina v. Pearce*, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969), that the Due Process Clause bars vindictiveness. In *Pearce*, one of the defendants had received a more severe sentence upon reconviction after his original conviction was overturned. The High Court held that although neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction, imposing a heavier sentence upon a reconvicted defendant for the explicit purpose of punishing the defendant for having succeeded in getting the original conviction set aside would be a "flagrant" violation of the Due Process Clause. The *Pearce* Court advanced two reasons for its holding. First, due process of law

requires that "vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." 395 U.S. at 725. Second, "since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Id.* Specifically, the *Pearce* Court held that a judge who had originally sentenced a defendant could not impose a more severe punishment upon resentencing unless the new sentence were based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.

In a later case, *Blackledge v. Perry*, 417 U.S. 21, 94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974), after a defendant convicted on a misdemeanor assault charge exercised his statutory right to appeal to a trial de novo, the prosecutor responded by charging the defendant with a felony for the same criminal conduct covered by the earlier misdemeanor charge. The U.S. Supreme Court held that the prosecutor's action violated due process. While the *Blackledge* Court found no evidence that the prosecutor acted in bad faith or maliciously in seeking a felony indictment against the defendant, it noted that *Pearce* was not based upon actual retaliatory motivation. The *Blackledge* Court concluded that the prosecutor "clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining a trial *de novo* in the Superior Court." 417 U.S. at 27. By following an appeal with an increased charge, thereby " 'upping the ante,' " the government could "insure that only the most hardy defendants will brave the hazards of a *de novo* trial." 417 U.S. at 28.

Both *Pearce* and *Blackledge* involve situations in which the defendant was penalized after exercising his right to appeal. *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978), *reh'g denied* 435 U.S. 918, 98 S. Ct. 1477, 55 L. Ed. 2d 511, presented a different situation. There, the High Court considered an allegation of vindictiveness which arose in a pretrial setting. The state prosecutor had threatened the

defendant that unless he pled guilty to the forgery charge, the prosecutor would also bring habitual criminal offender charges, on which the defendant was plainly chargeable. The habitual criminal charge carried a mandatory life imprisonment term; the forgery charge carried a maximum 10-year prison term. When the defendant refused to plead guilty, the prosecutor added the habitual count, and the defendant was convicted of the more severe charges. Even though the prosecutor openly admitted that he had acted vindictively in making his charging decisions, the *Bordenkircher* Court held that there was no due process violation, as the prosecutor had "openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution." 434 U.S. at 365.

Interpreting *Pearce* and *Blackledge* to forbid the State from unilaterally imposing a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction, the *Bordenkircher* Court contrasted the " 'give-and-take' " of plea bargaining where there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer. 434 U.S. at 363. Significantly, the *Bordenkircher* Court stated that "by tolerating and encouraging the negotiation of pleas, [the U.S. Supreme Court] has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." 434 U.S. at 364.

In *United States v. Goodwin*, 457 U.S. 368, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982), the defendant was originally charged with several misdemeanor and petty offenses. The case was assigned to an attorney who did not have authority to try felony cases or to seek indictments from the grand jury. After the defendant initiated plea negotiations with the prosecutor, he advised that he did not wish to plead guilty and desired a trial by jury. The case was transferred to the appropriate court, where the prosecutor obtained a four-count indictment charging defendant with one felony count and three misdemeanor counts. After the defendant was found guilty on the felony

count and one misdemeanor count, he moved to set aside the verdict on the ground of prosecutorial vindictiveness, arguing that the additional felony indictment "gave rise to an impermissible appearance of retaliation." 457 U.S. at 371.

Unlike the situations presented in *Pearce* and *Blackledge*, posttrial settings in which there was a presumption of prosecutorial vindictiveness, *Goodwin* arose in a pretrial setting in which there is no presumption of prosecutorial vindictiveness. Finding no evidence that could give rise to a claim of actual vindictiveness and absent a presumption of vindictiveness, the *Goodwin* Court held that no due process violation had been established. It reasoned that the Due Process Clause is not offended by all possibilities of increased punishment, but only by those which pose a realistic likelihood of vindictiveness. Importantly, the *Goodwin* Court stated that a "prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct." 457 U.S. at 382.

Consistent with the law developed by the U.S. Supreme Court, we have in the past rejected a claim of prosecutorial vindictiveness where increased charges were filed prior to trial. For example, in *State v. Trammell*, 240 Neb. 724, 484 N.W.2d 263 (1992), a complaint was initially filed against the defendant, charging him with aiding the consummation of a felony and with being a habitual criminal. The information was dismissed when he was convicted of an unrelated sexual assault and habitual criminal charge. After the defendant successfully appealed his conviction for sexual assault, the prosecutor refiled the aiding and habitual criminal charge. We concluded that the State was entitled to such discretion and that there had thus been no unlawful prosecutorial vindictiveness.

Although Flye alleges that the habitual criminal offender charges were added in the criminal mischief case because he successfully exercised his rights in the sexual assault and burglary proceedings, it is apparent from the record that Flye was informed during plea bargaining that the habitual criminal charges would be added to all of his pending four felonies if he rejected the State's offer. The State was well within its rights;

accordingly, there is no merit to this assignment of error.

### 4. PROBATION

In the fourth and final assignment of error, Flye argues that the district court mistakenly thought that, having found him to be a habitual criminal, it had no authority to place him on probation and that it was error not to grant him probation.

Citing *Brown v. Parratt*, 560 F.2d 303 (8th Cir. 1977), Flye incorrectly postulates that probation is a sentencing option for a habitual criminal. In *Brown*, a Nebraska prisoner appealing from the denial of his petition for a writ of habeas corpus alleged that the Nebraska habitual criminal statute constituted cruel and unusual punishment. Judge Gerald W. Heaney concurred in the decision of the court that the habitual criminal statute did not constitute such punishment. However, in doing so, Judge Heaney urged, notwithstanding a prior opinion of the Eighth Circuit to the contrary, that the statute unconstitutionally gives prosecutors unreasonable discretion to control a defendant's sentencing. In the course of that discussion, he observed that the "trial court may place the convicted defendant on probation but it must impose the minimum required by the statute." *Id.* at 305-06. However, not only was Judge Heaney not deciding anything, he cited no authority for the proposition that one found to be a habitual criminal can be placed on probation.

In point of fact, our statutes reflect otherwise. Probation is an option under Neb. Rev. Stat. § 29-2260(2) (Reissue 1989) if the offender has been convicted of "a misdemeanor or a felony for which mandatory or mandatory minimum imprisonment is not specifically required." Section 29-2221 provides that a convicted habitual criminal shall be punished by imprisonment in the Department of Correctional Services adult correctional facility for a term of not less than 10 nor more than 60 years.

In the absence of anything indicating to the contrary, statutory language is to be given its plain and ordinary meaning, and when the words of a statute are plain, direct, and unambiguous, no interpretation is necessary or will be indulged to ascertain their meaning. *State v. Stein*, 241 Neb. 225, 486 N.W.2d 921 (1992); *State v. Salyers*, 239 Neb. 1002, 480 N.W.2d

173 (1992); *State v. Matthews*, 237 Neb. 300, 465 N.W.2d 763 (1991). Because a conviction of habitual criminal dictates mandatory imprisonment, the court did not have discretion to impose a sentence of probation. Thus, the fourth and last assignment of error is as devoid of merit as were the preceding three.

## IV. JUDGMENT

Inasmuch as the record fails to sustain any of Flye's assignments of error, the judgment of the Court of Appeals is reversed, and the cause is remanded with the direction that the judgment of the district court be reinstated and affirmed.

REVERSED AND REMANDED WITH DIRECTION.

WRIGHT, J., not participating.