750 N.W.2d 674 (2008)
275 Neb. 899
STATE of Nebraska, appellee,
v.
Donell KING, appellant.
No. S-07-458.
Supreme Court of Nebraska.
June 13, 2008.
*675 James J. Regan for appellant.
*676 Jon Bruning, Attorney General, and George R. Love for appellee.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

SUMMARY
In North Carolina v. Pearce,[1] the U.S. Supreme Court held that due process imposes a presumption of vindictiveness when, following a defendant's successful appeal, a sentencing judge orders a more severe sentence that is not justified by objective evidence in the record since the original sentencing. Appellant, Donell King, contends that because he had successfully appealed his habitual criminal status in a previous appeal, the district court was presumptively vindictive when it resentenced him on remand to a greater aggregate minimum term.
King's three felony sentences were originally subject to 10-year mandatory minimum terms under the habitual criminal statutes. Because the district court imposed consecutive sentences, King's aggregate mandatory minimum term was 30 years. On remand, the district court resentenced King to consecutive terms of 20 to 25 years' imprisonment. It reasoned that without the mandatory minimum requirement, King would still be eligible for parole in 30 years and would serve the same time in prison.
We affirm because the Pearce presumption does not apply. The district court's sentences on remand reflect a calculated effort to craft sentences functionally equivalent to its original sentencing intent. The sentences do not increase King's prison time. The enlarged minimum term is neither more severe in effect nor a sentencing circumstance that raises a reasonable likelihood of vindictiveness.

BACKGROUND
This is King's third appeal from the district court's original sentences for first degree sexual assault, kidnapping, and robbery. The district court originally sentenced King to three consecutive sentences of 10 to 25 years' imprisonment. In both King's first and second appeals, we held that the State had failed to prove King's habitual criminal status.[2] In each appeal, we vacated the enhanced sentences and remanded for resentencing.
At King's third enhancement hearing, the district court concluded that the State had again failed to prove King's habitual criminal status. Commenting on why the sentences it was about to impose did not increase King's original sentences, the court stated:
The [e]ffect on the actual time that... King is going to serve is going to be non-existent. [King] was sentenced ... for the harm that was caused and the danger that he posed to public safety.... [T]he habitual criminal designation simply shifted the range of possible sentences that could be imposed. And because all three of the convictions here were already Class III felonies, it doesn't have an impact on the time that he would be required to serve, as it might have in a Class IV or a Class III(a) felony.
The court then proceeded to sentencing and stated that it intended "to impose the *677 same amount of actual prison time." King objected to any increase in his three consecutive terms because there was no new evidence to justify an increase in his sentences. The prosecutor argued that King's offenses had been extremely violent and that to impose the same consecutive terms without the mandatory minimum terms under the habitual criminal statutes would give King an earlier parole eligibility date.
In response to these arguments, the court calculated that under King's original three consecutive terms of 10 to 25 years, he would have served at least 30 years' imprisonment. The court based its calculation on the habitual criminal statutes, which mandate a minimum sentence of 10 years for each felony conviction. The court further calculated that under the original sentences, if King did not lose good time credit, he would have reached his mandatory release date in 37½ years, or one-half of his 75-year aggregate maximum term. The court concluded that King's original sentences imposed 30 to 37½ years in actual prison time.
The court then stated: "So my task then is to replicate the sentence. And I've done that by signing a sentencing order on each of the three counts that ... King be incarcerated for an indeterminate period of 20 to 25 years." The court reasoned that without the mandatory minimum sentences, King would still be eligible for parole in 30 years. Under the new consecutive terms, the court also concluded that he would still reach his mandatory release date in 37½ years, assuming he did not lose good time credit. The court stated that "the consecutive sentences of 20 to 25 years replicate the earlier sentence[s] in real time."

ASSIGNMENT OF ERROR
[1] King assigns that the district court denied him due process when it imposed greater sentences after his successful appeal of the court's earlier sentences.

STANDARD OF REVIEW
[2,3] Whether the district court's resentencing of a defendant following a successful appeal violates the defendant's due process rights presents a question of law.[3] When we review questions of law, we resolve the questions independently of the lower court's conclusions.[4]

ANALYSIS
King contends that the sentences he received after he successfully appealed his habitual criminal enhancement were effectively harsher sentences. He claims these sentences triggered the presumption of vindictiveness under the U.S. Supreme Court's decision in Pearce.[5]

PRESUMPTION OF VINDICTIVENESS UNDER PEARCE

[4] In Pearce, the U.S. Supreme Court held that due process prohibits imposing a more severe sentence at retrial if it is motivated by vindictiveness toward a defendant for having successfully attacked his conviction.[6] The U.S. Supreme Court has characterized its decision in Pearce as applying "a presumption of vindictiveness, which may be overcome only by objective *678 information in the record justifying the increased sentence."[7] Yet Pearce is not an absolute bar against a trial judge's imposing an increased sentence following a successful appeal; a sentencing judge has wide discretion in determining an appropriate sentence.[8] But the Pearce Court held that a judge who had originally sentenced a defendant could not impose a more severe punishment upon resentencing unless certain conditions were present: (1) The new sentence must be based upon objective information concerning the defendant's identifiable conduct occurring after the time of the original sentencing proceeding, and (2) the factual basis establishing such conduct must be included in the record.[9]
[5] The presumption of vindictiveness under Pearce can also apply to a remand for resentencing after a defendant has successfully challenged the sentence itself and not the conviction.[10] It does not apply if a different judge resentences the defendant after the defendant successfully appeals the first sentence.[11] But here the same judge resentenced King.
[6-9] The Pearce presumption is directed at the "vindictiveness of a sentencing judge," not simply enlarged sentences.[12] Because of the presumption's severity, "the Court has [presumed an improper vindictive motive] only in cases in which a reasonable likelihood of vindictiveness exists."[13] Obviously, the presumption does not apply if the circumstances do not present a reasonable likelihood of vindictiveness. For example, the presumption does not apply when a court vacates its own erroneous sentence under a sentencing statute and resentences the defendant to an arguably harsher sentence to comply with the statute.[14] A court must "look to the need, under the circumstances, to `guard against vindictiveness in the resentencing process.'"[15] "Where the prophylactic rule of Pearce does not apply, the defendant may still obtain relief if he can show actual vindictiveness upon resentencing."[16] King, however, does not argue that the record reflects proof of actual vindictiveness.

NEBRASKA CASE LAW APPLYING PEARCE PRESUMPTION
[10] In a habitual criminal proceeding, Pearce requires reversal of an increase in the aggregate maximum sentence after a successful appeal of an unlawful sentence.[17] To avoid reversal, the district court must justify such an increase with new evidence at the resentencing hearing about the offense or the defendant.[18]
We have also held that an increase in the aggregate minimum term on remand *679 violated Pearce. In State v. McArthur,[19] the defendant pleaded guilty to two Class IV felony offenses and one Class III felony offense. The district court sentenced him to three consecutive terms of imprisonment: 1 to 5 years for each Class IV felony and 6 to 20 years for the Class III felony. On appeal, we vacated the judgment and sentences because the court failed to advise the defendant that one of his sentences must be served consecutively. We remanded for further proceedings. On remand, the State dismissed one of the Class IV charges. For the two remaining offenses, the district court increased the terms of the consecutive sentences: 20 months to 5 years for the remaining Class IV felony and 80 months to 20 years for the Class III felony.
In his second appeal, the defendant assigned as error the court's increase in the minimum sentences for the two remaining felonies. The aggregate maximum sentence for the two offenses was the same. We stated that the sentencing court had increased the defendant's combined minimum sentence for the two offenses by 16 months. Applying Pearce, we concluded that "the record is devoid of any explanation for the increase in the minimum sentences. Therefore, the increased minimum sentences cannot withstand constitutional due process scrutiny and must be modified."[20]
We believe McArthur is distinguishable. The increase in the defendant's aggregate minimum sentence would have lengthened the time he served in prison before being eligible for parole. That is not so here.

OTHER COURTS' APPLICATION OF PEARCE

Other courts have held that Pearce does not apply when the sentencing court on remand, after a habitual criminal enhancement is vacated, imposes the same or nearly the same sentence.[21] The Florida Court of Appeal in Thomas v. State[22] held that a sentencing court's increase in the maximum term was not more severe when the court imposed the same prison time after the appellate court had vacated a mandatory minimum sentence.
In Thomas, the sentencing court originally sentenced the defendant to 40 years' imprisonment as a habitual violent offender with a 15-year mandatory minimum. After the appellate court vacated this sentence in a postconviction action, the sentencing court resentenced him as a habitual felony offender to a term of 50 years with no mandatory minimum. The court stated that it intended to have the defendant serve the same time. It determined that the new sentence would result in the same prison time because there was no longer a mandatory minimum term. The Florida Court of Appeal held that the defendant failed to show his new sentence was more severe or had been motivated by vindictiveness.[23]

RESOLUTION
We have similarly questioned whether a greater maximum sentence was a more severe sentence when the defendant would reach his parole eligibility date sooner *680 under the new sentence.[24] Here, the district court intended and correctly calculated that its new sentences would impose the same prison time as its original sentences. Other courts have reasoned that the resentencing, after one of a defendant's multicount convictions has been reversed, does not signal retaliatory animus when it does not increase the actual time served and only reflects the judge's original sentencing intent:
[W]hen a defendant is found guilty on a multicount indictment, there is a strong likelihood that the district court will craft a disposition in which the sentences on the various counts form part of an overall plan. When the conviction on one or more of the component counts is vacated, common sense dictates that the judge should be free to review the efficacy of what remains in light of the original plan, and to reconstruct the sentencing architecture upon remand, within applicable constitutional and statutory limits, if that appears necessary in order to ensure that the punishment still fits both crime and criminal.[25]
This reasoning applies here.
First, under both the district court's original and new sentences, King's mandatory release and parole eligibility dates were the same. King would reach his mandatory release date in 37½ years under either set of sentences.[26] The court also correctly determined that King would reach parole eligibility in 30 years under his original mandatory minimum sentences. We have held that a mandatory minimum 10-year sentence under the habitual criminal statutes cannot be reduced by good time credit.[27] The Legislature has codified this requirement.[28] Likewise, the court correctly determined that under its new sentences, King would still be eligible for parole in 30 years, or when he had served one-half of the new 60-year aggregate minimum term.[29] King conceded at oral argument that the new minimum and maximum terms are functionally the same as the original terms.
[11] Second, the new sentences reflected the court's original sentencing intent, which was not simply tied to mandatory minimums under the habitual criminal statutes. The court was required to impose mandatory minimum terms of 10 years for each felony conviction once it had found King to be a habitual criminal. But it was not required to impose consecutive sentences for these offenses.[30] In Nebraska, unless prohibited by statute or unless the sentencing court states otherwise when it pronounces the sentences, multiple sentences imposed at the same time run concurrently with each other.[31] But at King's original sentencing, the court rejected a request for concurrent sentences because of the seriousness of these crimes. As the court stated at the third resentencing hearing, "[King] was [originally] sentenced *681 ... for the harm that was caused and the danger that he posed to public safety. The ... habitual criminal designation simply shifted the range of possible sentences that could be imposed."
The resentencing circumstances here reflect neither more severe sentences nor a reasonable likelihood of vindictiveness. Instead, the record reflects the district court's carefully calculated determination to ensure that its new sentences, which are not subject to mandatory minimum terms, would be functionally equivalent to its original sentences. The Pearce[32] presumption of vindictiveness does not apply.
AFFIRMED.
HEAVICAN, C.J., not participating.
NOTES
[1] North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled on other grounds, Alabama v. Smith, 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).
[2] See, State v. King, 272 Neb. 638, 724 N.W.2d 80 (2006); State v. King, 269 Neb. 326, 693 N.W.2d 250 (2005).
[3] See, State v. Wilson, 252 Neb. 637, 564 N.W.2d 241 (1997); State v. Bruna, 14 Neb. App. 408, 710 N.W.2d 329 (2006), affirmed 272 Neb. 313, 721 N.W.2d 362.
[4] State v. Mata, 275 Neb. 1, 745 N.W.2d 229 (2008).
[5] Pearce, supra note 1.
[6] See Wilson, supra note 3 (discussing Pearce, supra note 1).
[7] United States v. Goodwin, 457 U.S. 368, 374, 102 S.Ct. 2485, 73 L.Ed.2d 74(1982).
[8] See Wilson, supra note 3.
[9] See, id.; State v. Flye, 245 Neb. 495, 513 N.W.2d 526 (1994).
[10] See State v. Lopez, 217 Neb. 719, 350 N.W.2d 563 (1984).
[11] See Bruna, supra note 3.
[12] See Texas v. McCullough, 475 U.S. 134, 138, 106 S.Ct. 976, 89 L.Ed.2d 104(1986).
[13] Goodwin, supra note 7, 457 U.S. at 373, 102 S.Ct. 2485.
[14] See State v. Blankenship, 195 Neb. 329, 237 N.W.2d 868 (1976). See, also, State v. Egger, 237 Neb. 688, 467 N.W.2d 411 (1991).
[15] McCullough, supra note 12, 475 U.S. at 138, 106 S.Ct. 976.
[16] Id.
[17] See Lopez, supra note 10.
[18] See id.
[19] State v. McArthur, 230 Neb. 653, 432 N.W.2d 839 (1988).
[20] Id. at 655, 432 N.W.2d at 841.
[21] See, e.g., Thomas v. State, 638 So.2d 169 (Fla.App.1994); Gray v. State, 871 N.E.2d 408 (Ind.App.2007); State v. Freeman, 577 So.2d 216 (La.App.1991). But see Raines v. State, 562 So.2d 530 (Ala.Crim.App.1988).
[22] Thomas, supra note 21.
[23] See id. See, also, Walker v. State, 499 So.2d 884 (Fla.App. 1st Dist.1986); Trasti v. State, 487 So.2d 428 (Fla.App. 5th Dist.1986). But see Parker v. State, 977 So.2d 671 (Fla. App. 4th Dist.2008).
[24] See Blankenship, supra note 14.
[25] U.S. v. Pimienta-Redondo, 874 F.2d 9, 14 (1st Cir.1989). Accord U.S. v. Shue, 825 F.2d 1111 (7th Cir.1987). See, also, Kelly v. Neubert, 898 F.2d 15 (3d Cir.1990); Paul v. United States, 734 F.2d 1064 (5th Cir.1984).
[26] See, Neb.Rev.Stat. § 83-1,107(2) and (3) (Reissue 1999 & Cum.Supp.2006); Neb.Rev. Stat. § 83-1,110(2) (Reissue 1999 & Cum. Supp.2006).
[27] See Johnson v. Kenney, 265 Neb. 47, 654 N.W.2d 191 (2002).
[28] See § 83-1,110(1).
[29] See § 83-1,110(2).
[30] See, generally, State v. Thomas, 268 Neb. 570, 685 N.W.2d 69(2004).
[31] See, id.; State v. Sorenson, 247 Neb. 567, 529 N.W.2d 42 (1995).
[32] Pearce, supra note 1.