IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BURTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

KARNELL D. BURTON, APPELLANT.

Filed June 30, 2015.    No. A-14-584.

Appeal from the District Court for Douglas County: GARY B. RANDALL, Judge. Affirmed.

Michael P. Meckna for appellant.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee.

MOORE, Chief Judge, and PIRTLE and BISHOP, Judges.

BISHOP, Judge.

Karnell D. Burton appeals from the district court's denial of his motion for postconviction relief without an evidentiary hearing.

## I. BACKGROUND

The facts in the instant case were summarized in Burton's direct appeal to the Nebraska Supreme Court in *State v. Burton*, 282 Neb. 135, 137-38, 802 N.W.2d 127, 130-31 (2011):

> This case arises out of the shootings of Timothy Thomas and his cousin Marshall Turner, which left Thomas dead and Turner seriously wounded. Generally, the State accused Burton and his alleged accomplice, Thunder Collins, of shooting Thomas and Turner in an attempt to steal cocaine from them. . . .
>
> The State's evidence at trial, taken in the light most favorable to the State, established that Collins, Turner, and Thomas had been engaged in transporting cocaine from Los Angeles, California, to sell in Omaha, Nebraska. On the trip that culminated in

- 1 -

the shootings at issue in this case, Turner and Thomas had driven to Omaha from California in a sports utility vehicle (SUV), accompanied by Turner's girlfriend and another man, Darryl Reed. The cocaine they were transporting had been hidden in the body of the SUV.

Collins contacted his friend Ahmad Johnson, who testified at trial that Collins asked him to help Collins "get these guys." Collins told Johnson that they needed a secure location to get the drugs out of the SUV. Johnson asked his friend Karl Patterson whether they could use Patterson's automotive repair shop. Patterson refused, but, according to Johnson, agreed to give Collins a gun. Collins and Johnson then tried to contact Burton, but failed. So, Collins told Turner and Thomas to follow Collins in their SUV to Johnson's house, to use Johnson's garage to remove the drugs from the SUV.

Burton called Collins back, and Collins told him to come to Johnson's house, so he did. Johnson took the gun that they had gotten from Patterson and placed it in the kitchen. Burton and Johnson were in the house talking when Collins came in and asked for a gun Burton had brought with him, which was smaller. Johnson said he told Burton to "watch [Collins'] back," then went outside and sat in his car, listening to music.

Turner and Thomas were still in the garage, and Turner was watching Thomas work to remove the drugs from the SUV, when Turner was suddenly shot in the neck. Turner fell to the ground and crawled under the SUV. When he got up, he saw Burton pointing a gun at him and Collins holding Thomas by the hair. Turner tried to get between Collins and Thomas, so Burton shot Turner in the buttocks. Collins then shot Thomas in the head. Burton went to help Collins move Thomas' body, and Turner heard Burton say, "Let me make sure this nigger dead." Another shot was fired, grazing Turner's head. Turner heard Collins and Burton go out the back door of the garage, so he got into the SUV, drove it through the closed garage door, and fled.

The State initially charged Burton on November 10, 2008, with first degree murder (felony murder), two counts of use of a deadly weapon to commit a felony, and attempted second degree murder. On March 26, 2009, the State filed a motion for leave to file an amended information to amend the first degree murder charge to add an alternative theory of premeditated murder. A hearing on the motion was held on April 14; counsel for Burton objected to the amendment and the district court permitted the State to file the amended information. The State filed its amended information on April 15.

Trial was scheduled to begin on July 13, 2009 (Burton had previously made a voluntary waiver of his right to speedy trial at a hearing on March 31). On the same day trial was scheduled to begin, Burton filed a motion in limine requesting two alternative prayers of relief: he sought to preclude the State from presenting evidence or testimony regarding the results of certain DNA testing of a shoe and clothing of Burton's that he alleged was not provided to him in a timely manner for cross-examination purposes; in the alternative, Burton sought a continuance of trial to evaluate and subject the DNA evidence for independent testing. Burton alleged that the complete results of the State's DNA testing were not provided to Burton's counsel until July 8, five days before trial was scheduled to begin. During a hearing on Burton's motion held the same date, the court stated on the record that the situation did put Burton in a position of undue prejudice, but

that it was not making a ruling with regard to a permanent limitation or exclusion of the evidence. However, the court stated that "if the State wishes to go forward today, I'm going to grant the motion in limine with regard to the DNA." The court left the choice to proceed to trial up to the State, and if it chose not to proceed to trial, another trial date would be set. The State chose not to proceed to trial without the DNA evidence; the court stated that it was granting Burton's motion to continue trial pursuant to his request. Trial was continued to October 13.

On July 13, 2009, the same date that Burton filed and had his motion to continue sustained, the State filed a motion for leave to file a second amended information, seeking to add a first degree assault charge and an associated third use of a deadly weapon to commit a felony charge (both arising out of the same facts as the underlying charges). A hearing on the State's motion was held on July 17. Counsel for Burton objected on the basis that the filing was tardy, it seemed to just be "piling on," and also objected on speedy trial grounds. The court granted the State's motion on July 28, and the State filed its second amended information adding the charges of first degree assault and use of a deadly weapon to commit a felony on the same date.

A jury trial commenced on October 13, 2009. Burton was convicted of manslaughter, attempted second degree murder, first degree assault, and two counts of use of a deadly weapon to commit a felony, and the district court sentenced him to a total of 80 to 130 years' imprisonment.

Burton's trial counsel also represented him on his direct appeal, assigning four errors: the district court (1) violated Burton's statutory right to a speedy trial when it granted the State's motion to file the second amended information (over his objection) which added the charges of first degree assault and use of a deadly weapon to commit a felony; (2) committed reversible error when it denied Burton's motion for mistrial based on prosecutorial misconduct during the State's rebuttal in final argument; (3) committed reversible error when it refused to allow Burton to present evidence that two of the State's witnesses were members of a violent street gang; and (4) abused its discretion in imposing excessive sentences. The Nebraska Supreme Court concluded Burton waived any violation of his right to speedy trial with respect to the amended charges because he did not move for discharge before trial. After finding no merit to Burton's remaining three assignments of error, the Supreme Court affirmed Burton's convictions and sentences.

Burton filed a motion for postconviction relief on August 27, 2012, pursuant to Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2008). He alleged he was denied effective assistance of trial counsel at the pretrial, trial, and appellate stages for the following reasons: (1) trial counsel failed to protect his statutory and constitutional rights to a speedy trial; (2) trial counsel failed to protect him from vindictive prosecution; and (3) trial counsel failed to request the lesser included offense and jury instruction of "attempted sudden quarrel manslaughter" for the charge of attempted second degree murder.

Burton alleged his due process and equal protection rights were violated by the State when it filed the second amended information because such amendment amounted to prosecutorial vindictiveness.

Burton also alleged his due process and equal protection rights were violated by the district court for the following reasons: (1) the district court committed plain error and/or abused its discretion in granting a continuance at the State's request but finding that the request was made by him, which resulted in a violation of his speedy trial rights; (2) the district court committed plain

error and/or abused its discretion in permitting the State to file the second amended information; and (3) the district court committed plain error by failing to instruct the jury of the lesser included offense of "attempted sudden quarrel manslaughter" with respect to the charge of attempted second degree murder.

The State filed a motion to dismiss Burton's postconviction relief without a hearing on the basis that his claims were either procedurally barred or the record affirmatively showed that he was entitled to no relief.

On February 19, 2014, the district court entered an order denying Burton's motion for postconviction relief, without an evidentiary hearing. The district court found that the record was clear that Burton made an unconditional waiver of his right to speedy trial on March 31, 2009, and the court scheduled trial for July 13. The court noted that with Burton's consent, trial was continued from July 13 to the agreed upon date of October 13, for Burton to further explore certain DNA evidence. The district court found that Burton through his counsel, and individually, unconditionally waived his right to speedy trial and never formally terminated the right prior to the actual date of trial, and that trial counsel was not ineffective in requesting additional time to analyze DNA evidence being offered by the State.

With respect to Burton's claim that trial counsel was ineffective in failing to file a motion to discharge to protect his speedy trial rights regarding the second amended information, the court cited to *State v. Gibbs*, 253 Neb. 241, 570 N.W.2d 326 (1997), for the proposition that successive informations regarding the same conduct are not to be considered separately for speedy trial determinations, and thus trial counsel was not ineffective and Burton was not prejudiced.

The district court concluded that Burton's claims for prosecutorial vindictiveness were conclusory without facts to support his allegations.

With respect to Burton's claim that his trial counsel was ineffective for failing to request the lesser included offense of attempted sudden quarrel manslaughter, pursuant to *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011), the district court concluded that the case was decided 2 years after Burton's trial and the crime of attempted voluntary manslaughter did not exist at the time of his trial; Burton's counsel could not be held to be ineffective for failing to anticipate a change in the existing law.

Finally, the district court concluded that Burton's claims for plain error and/or abuse of discretion were procedurally barred with respect to the district court's granting of the July 13, 2009, continuance without his express waiver, permitting the State to file the second amended information, and failing to instruct the jury as to the lesser included offense of "attempted sudden quarrel manslaughter."

Burton filed an appeal from the district court's order denying postconviction relief to this court on March 16, 2014; however, counsel for Burton was informed by the clerk's office that there was no filing fee so the filing fee was not paid. This court dismissed Burton's appeal for lack of jurisdiction on May 9. Following a hearing in the district court on May 29 on Burton's motion to reinstate his appeal, the district court reinstated the instant appeal on June 10.

## II. ASSIGNMENTS OF ERROR

Burton assigns thirteen errors on appeal, which we summarize and consolidate as follows: the district court erred in (1) determining he was not denied effective assistance of counsel where counsel failed to protect his constitutional and statutory speedy trial rights; (2) determining he was not denied effective assistance of counsel where counsel failed to request that the jury be instructed on the lesser included offense of "attempted sudden quarrel manslaughter;" (3) determining he was not entitled to an evidentiary hearing with respect to whether his counsel was ineffective for failing to raise the issue of vindictive prosecution at trial or on appeal; (4) determining he was procedurally barred from claiming the trial court plainly erred or abused its discretion in finding that Burton requested a continuance on July 13, 2009, in violation of his constitutional and statutory speedy trial rights; (5) determining he was procedurally barred from claiming the trial court plainly erred or abused its discretion in determining the July 13 continuance applied to the charges added in the second amended information; (6) determining he failed to allege sufficient facts to support the claim of prosecutorial vindictiveness; (7) determining he was procedurally barred from claiming the trial court committed plain error or abused its discretion in allowing the State to file the second amended information; and (8) determining that he was procedurally barred from claiming that the district court committed plain error for failing to instruct the jury on the lesser included offense of "attempted sudden quarrel manslaughter."

## III. STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015). An evidentiary hearing on a motion for postconviction relief must be granted when the motion contains factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. *Id*. However, if the motion alleges only conclusions of fact or law, or the records and files in the case affirmatively show that the movant is entitled to no relief, no evidentiary hearing is required. *Id*.

Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. *State v. Boppre,* 280 Neb. 774, 790 N.W.2d 417 (2010). When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *Id*.

## IV. ANALYSIS

### 1. PLAIN ERROR/ABUSE OF DISCRETION CLAIMS

The district court in the instant action concluded that several of Burton's claims were procedurally barred; namely, Burton's claims that the trial court committed plain error and/or abused its discretion in (1) determining the July 13, 2009, continuance was made at his request; (2) determining that the July 13 continuance applied to the added charges in the second amended information; (3) permitting the State to file a second amended information; and (4) failing to instruct the jury on the lesser included offense of "attempted sudden quarrel manslaughter" with

respect to the attempted second degree murder charge. Burton argues the district court erred in concluding his above claims were procedurally barred.

Plain error cannot be asserted in a postconviction proceeding to raise claims of error by the trial court. *State v. Sepulveda*, 278 Neb. 972, 775 N.W.2d 40 (2009). Further, a motion for postconviction relief cannot be used to secure review of issues that were known to the defendant and could have been litigated on direct appeal. *State v. Hessler*, 282 Neb. 935, 807 N.W.2d 504 (2011). No matter how they may be phrased or rephrased, if issues raised in a motion for postconviction relief were or could have been litigated on direct appeal, the defendant is procedurally barred from using them as a basis for postconviction relief. *State v. Boppre, supra.*

Each of Burton's above claimed errors with respect to the trial court's actions or inaction were known to him at the time of his direct appeal and could have been raised and litigated in his direct appeal. As such, the district court in the instant case did not err in determining these claims were procedurally barred.

### 2. PROSECUTORIAL VINDICTIVENESS

Burton claims the district court erred in determining he failed to allege sufficient facts to support the claim of prosecutorial vindictiveness. (Burton also alleges his trial counsel was ineffective for failing to protect him from prosecutorial vindictiveness, which we discuss further in our analysis below.) As with Burton's claimed errors regarding the trial court's actions, Burton's claim that the State's filing of the second amended information amounted to prosecutorial vindictiveness could have been raised and litigated on his direct appeal. As such, this claim is also procedurally barred. *State v. Hessler, supra* (a motion for postconviction relief cannot be used to secure review of issues that were known to the defendant and could have been litigated on direct appeal).

### 3. INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

Burton's remaining assignments of error regard his claims for ineffective assistance of counsel. Although a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, when a defendant was represented both at trial and on direct appeal by the same lawyer, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief. *State v. McKinney*, 279 Neb. 297, 777 N.W.2d 555 (2010). Burton was represented by the same attorney at trial and on his direct appeal and, as such, the present postconviction action is his first opportunity to assert ineffective assistance of counsel.

In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel at trial or on direct appeal, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Dunster*, 278 Neb. 268, 769 N.W.2d 401 (2009). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id*. In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the

proceeding would have been different. *Id*. The two prongs of this test, deficient performance and prejudice, may be addressed in either order. *Id*.

An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. *State v. Soukharith*, 260 Neb. 478, 618 N.W.2d 409 (2000). An evidentiary hearing is not required when the motion alleges only conclusions of fact or law. *Id*. Further, when the motion properly alleges an infringement of the defendant's constitutional rights, an evidentiary hearing should still be denied when the records and files affirmatively show that the defendant is entitled to no relief. *Id*. Thus, the focus of our inquiry is whether Burton has alleged facts which, if proved, would establish that he was denied effective assistance of counsel.

(a) Speedy Trial Claim With Respect to
July 13, 2009, Continuance

Although Burton alleges both his constitutional and statutory speedy trial rights were violated, his arguments are limited to the statutory speedy trial provision. For an appellate court to consider an alleged error, a party must specifically assign and argue it. *State v. Johnson*, 290 Neb. 862, 862 N.W.2d 757 (2015). We thus limit our discussion to whether Burton's trial counsel was ineffective with respect to his statutory right to a speedy trial.

The statutory right to a speedy trial is set forth in Neb. Rev. Stat. §§ 29-1207 and 29-1208 (Cum. Supp. 2014). Under § 29-1207(1), "[e]very person indicted or informed against for any offense shall be brought to trial within six months, and such time shall be computed as provided in this section." To calculate the deadline for trial under the speedy trial statutes, a court must exclude the day the State filed the information, count forward 6 months, back up 1 day, and then add any time excluded under § 29-1207(4). *State v. Vela-Montes*, 287 Neb. 679, 844 N.W.2d 286 (2014). If a defendant is not brought to trial before the running of the time for trial as provided for in § 29-1207, as extended by excluded periods, he or she shall be entitled to his or her absolute discharge from the offense charged and for any other offense required by law to be joined with that offense. § 29-1208.

Burton asserts that his trial counsel's performance was deficient because he did not object to the district court's finding that the July 13, 2009, continuance was made at the defendant's request. On July 13, Burton filed a motion in limine containing two alternative prayers for relief: an order from the district court precluding the State from presenting any evidence or testimony concerning DNA evidence, or in the alternative, (2) a continuance of the trial. The district court stated on the record that the untimely DNA results did put Burton in a position of undue prejudice, and stated that "if the State wishes to go forward today, I'm going to grant the motion in limine with regard to the DNA." The court left the choice to proceed to trial up to the State; the State chose not to proceed to trial without the DNA evidence and the district court continued trial until October 13. Counsel for Burton replied, "That's acceptable."

Burton's trial counsel sought to cure the prejudice caused by the State's belated disclosure of evidence either by suppression of the evidence, or by a continuance of trial so that Burton could obtain independent testing in order to meaningfully cross-examine the State's witness. The district

court granted Burton's alternative request for a continuance. When a continuance will cure the prejudice caused by belated disclosure of evidence, a continuance should be requested by counsel and granted by the trial court. *State v. Collins*, 281 Neb. 927, 799 N.W.2d 693 (2011). The district court granted one of the requests for relief specifically requested by Burton to cure the prejudice caused by the State's belated disclosure of evidence. And, trial counsel agreed that a continuance to October 13, 2009, was "acceptable." The period of delay resulting from a continuance granted at the request or with the consent of the defendant or his or her counsel is excludable from the speedy trial clock. See § 29-1207(4)(b).

The original information was filed on November 10, 2008; this made May 10, 2009, the original deadline for trial absent any excludable time. Burton filed a motion for discovery on November 17, 2008, which the trial court granted on November 19, resulting in 2 days of excludable time. At a hearing on March 31, 2009, Burton waived his right to speedy trial until the next available trial date at which his counsel could appear, which was July 13, resulting in 104 days of excludable time. Counsel for Burton both requested and consented to a continuance of trial from July 13 to October 13, resulting in 92 days of excludable time. In total, there were 198 days of excludable time, and the State had until November 24 to bring Burton to trial. Burton was brought to trial on October 13, prior to the running of the time for trial as provided for in § 29-1207, and therefore his trial counsel cannot be ineffective for failing to file a motion to discharge the charges contained in the original information.

### (b) Speedy Trial Claims With Respect to
### Second Amended Information

Burton argues his trial counsel was ineffective for failing to protect his speedy trial rights with respect to the new charges contained in the second amended information--the first degree assault charge and the associated weapons charge--filed on July 28, 2009. Burton argues that the 6-month speedy trial clock on the charges in the second amended information should be calculated from the date the original information was filed, as the new charges arose out of the same set of facts and required no new evidence to support them. And, Burton argues that because the charges in the second amended information were filed after he (allegedly) provided his limited waiver of his right to a speedy trial from July 13 to October 13, he contends that the waiver was not effective against the charges added in the second amended information.

Burton's trial counsel did assign this as error on his direct appeal. However, the Nebraska Supreme Court concluded that Burton waived any violation of his right to speedy trial by not moving for discharge before trial. See *State v. Burton*, 282 Neb. 135, 802 N.W.2d 127 (2011). Burton now argues that his trial counsel was ineffective in failing to file a motion to discharge before trial. Only if a motion would have resulted in the defendant's absolute discharge, thus barring a later trial and conviction, could the failure to move for discharge be deemed ineffective assistance. *State v. Lee*, 282 Neb. 652, 807 N.W.2d 96 (2011). We next examine whether a motion would have resulted in Burton's absolute discharge.

Under circumstances where an amended information charges a different crime but also the original crimes, the original and new charges run on different speedy trial clocks, so long as the "new" charge was not one required to be joined with the original charges under double jeopardy

principles. See *State v. Hettle*, 288 Neb. 288, 848 N.W.2d 582 (2014). The original charges continue with the same speedy trial clock, while the new charges begin with their own new speedy trial clock. *Id*. See, also, *State v. Gibilisco*, 279 Neb. 308, 778 N.W.2d 106 (2010) (additional first degree sexual assault counts contained in an amended information, which the State alleged occurred during the same timeframe and against the same victim as was alleged in the original information, nevertheless constituted separate and distinct crimes and required the State to present different evidence to prove each of the crimes, so the speedy trial clock restarted upon the filing of the amended information).

In the instant case, the State asserts that the new charges added in the second amended information had their own speedy trial clock, whereas Burton contends that the new charges were "related to the same incident as the original trial information and did not stem from any new evidence" and therefore ran on the same speedy trial clock as the charges in the original information. Brief for appellant at 33. Although Burton is correct in identifying that the felony charges added by the second amended information were related to the same incidents or were committed simultaneously with the felonies alleged in the original information and first amended information, the question we must answer is whether the "new" charges of first degree assault and related weapon charges were required to be joined with the original charges under double jeopardy principles. See *State v. Hettle*, *supra*.

The State initially charged Burton on November 10, 2008, with first degree murder of Thomas (felony murder) (later amended to add an alternative theory of premeditated murder), attempted second degree murder of Turner, and two counts of use of a deadly weapon to commit a felony. The second amended information filed on July 29, 2009, added charges of first degree assault of Turner and a related use of a deadly weapon to commit a felony charge. Nebraska courts have previously held that double jeopardy does not bar prosecution of a defendant for first degree assault following an acquittal on attempted second degree murder. See *State v. Michael Ray Smith*, 3 Neb. App. 564, 529 N.W.2d 116 (1995). See, also *State v. Lovelace*, 212 Neb. 356, 322 N.W.2d 673 (1982). Actual injury is a necessary element of the crime of first degree assault, but is not a necessary element of the crime of attempted second degree murder. See *State v. Michael Ray Smith*, *supra*. And, intent to kill, a required element of the crime of attempted second degree murder, is not an element of the crime of first degree assault. See Neb. Rev. Stat. § 28-304 (Reissue 2008). Each offense requires proof of an element which the other does not, and thus double jeopardy does not bar successive prosecutions. See *id*. When underlying felonies themselves are not barred from successive prosecution on double jeopardy grounds, separate underlying use of a weapon charges are also not barred by double jeopardy. See *State v. Michael Ray Smith*, *supra*.

Accordingly, double jeopardy principles did not require the charge of first degree assault of Turner and underlying use of a deadly weapon charge to be joined with the charge of attempted second degree murder of Turner and underlying use of a deadly weapon charge contained in the original information. Therefore, the speedy trial clock for the "new" charges in the second amended information began running on the date it was filed, July 28, 2009. Burton was brought to trial on October 13, well before the expiration of the 6-month statutory speedy trial clock. Burton's trial counsel was not ineffective for failing to file a motion to discharge because such motion would not have been successful.

### (c) Lesser-Included Offense Instruction

Burton argues that his trial counsel was ineffective for failing to request a jury instruction for attempted sudden quarrel manslaughter, pursuant to *State v. Ronald Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011). Burton argues that "the law which did not allow 'attempted sudden quarrel manslaughter' as a lesser-included offense was questionable for more than ten years prior to the decision in *State v. [Ronald] Smith, supra*." Brief for appellant at 51.

The district court concluded that Burton's counsel could not be ineffective for failing to anticipate a change in the existing law as the crime of attempted voluntary manslaughter did not exist at the time of his trial, and we agree. Until the Nebraska Supreme Court released *State v. Ronald Smith, supra*, the crime of attempted voluntary manslaughter (including upon a sudden quarrel) did not exist in Nebraska. *State v. William Smith*, 19 Neb. App. 708, 811 N.W.2d 720 (2012) *aff'd on other grounds*, 284 Neb. 636, 822 N.W.2d 401 (2012) (affirming this court's conclusion that trial counsel could not be ineffective for failing to anticipate how the court would rule in *State v. Ronald Smith, supra*).

Burton's trial took place in October 2009, and the Supreme Court's opinion in *State v. Ronald Smith, supra*, was released in 2011. The failure to anticipate a change in existing law does not constitute deficient performance. *State v. Armendariz*, 289 Neb. 896, 857 N.W.2d 775 (2015). As such, Burton's trial counsel could not have been ineffective for failing to request that the jury be instructed on attempted sudden quarrel manslaughter.

### (d) Failure to Pursue Vindictive Prosecution Claim

Burton alleges his trial counsel was ineffective for failing to pursue vindictive prosecution charges against the State in response to its filing of the second amended information. Burton argues that he made sufficient allegations to at least merit an evidentiary hearing on his claim, citing to the fact that the State filed the second amended information on the same day he filed and the district court sustained his motion regarding the DNA evidence.

Consistent with the law developed by the U.S. Supreme Court, Nebraska courts have in the past rejected a claim of prosecutorial vindictiveness where increased charges were filed prior to trial. *State v. Flye*, 245 Neb. 495, 513 N.W.2d 526 (1994). In *State v. Johnson*, 234 Neb. 110, 449 N.W.2d 232 (1989), the defendant asserted that his due process rights were violated when the prosecutor dismissed an original misdemeanor charge and refiled a felony complaint after the defendant refused to plead to the original charge and exercised his right to a trial. The Nebraska Supreme Court refused to presume that the prosecutor's actions were presumptively vindictive, in large part because of the treatment by the U.S. Supreme Court of questions of alleged prosecutorial vindictiveness in the pretrial setting. See, *United States v. Goodwin*, 457 U.S. 368, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982); *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978). In *State v. Flye, supra,* the court found no prosecutorial vindictiveness had been demonstrated where the State added habitual criminal charges in response to the defendant's rejection of a plea offer. In *State v. Morrison*, 243 Neb. 469, 500 N.W.2d 547 (1993), *disapproved on other grounds, State v. Johnson*, 256 Neb. 133, 589 N.W.2d 108 (1999), the court found no prosecutorial vindictiveness had been demonstrated where the State amended an information to include an additional charge after the defendant rejected an offer by the State to forgo adding the

additional charge if the defendant elected to plead to the original charge. Similarly, in *State v. Trammell*, 240 Neb. 724, 484 N.W.2d 263 (1992), the court found no prosecutorial vindictiveness had been demonstrated where previously dismissed charges were refiled after the defendant successfully appealed his conviction on an unrelated charge.

At the pretrial stage, there is good reason to be cautious about adopting a presumption of vindictiveness to evaluate a prosecutor's response to the defendant's demand for a trial. *United States v. Goodwin, supra.* At the pretrial stage, the prosecutor's assessment of the proper extent of prosecution may not have crystallized, and a prosecutor should remain free prior to trial to exercise broad discretion to determine the extent of the societal interest in prosecution. *Id.* An initial decision should not prevent future conduct, because the initial charges filed may not reflect the extent to which an individual is legitimately subject to prosecution. *Id.*

In light of the above case law, it is clear that the State's filing of a second amended information at the pretrial stage did not justify a presumption of vindictive prosecution. Because there was no presumption of prosecutorial vindictiveness, or evidence of actual prosecutorial vindictiveness, Burton cannot show that trial counsel was deficient for failing to raise the issue.

## V. CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Burton's motion for postconviction relief without an evidentiary hearing.

AFFIRMED.