777 N.W.2d 555 (2010)
279 Neb. 297
STATE of Nebraska, appellee,
v.
Lora L. McKINNEY, appellant.
No. S-09-311.
Supreme Court of Nebraska.
January 22, 2010.
*558 Sean J. Brennan, of Brennan & Nielsen Law Offices, P.C., Lincoln, for appellant.
Jon Bruning, Attorney General, and James D. Smith for appellee.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
GERRARD, J.
Lora L. McKinney was convicted in 2005 of first degree murder for the killing of Harold Kuenning and sentenced to life imprisonment. We affirmed McKinney's conviction and sentence in State v. McKinney (McKinney I),[1] finding that although the trial court erred in admitting McKinney's DNA into evidence, the error was harmless. McKinney filed a motion for postconviction relief, which the district court denied without an evidentiary hearing. The primary argument in McKinney's brief on appeal is that we erred in McKinney I by finding harmless error even though the State did not argue it. *559 We find that each of McKinney's arguments is either meritless or procedurally barred, and we affirm the judgment of the district court.

BACKGROUND
The evidence against McKinney was detailed in McKinney I, and we summarize it here only to the extent necessary. The State's theory of the case was that on January 5, 1998, Kuenning took McKinney, his former girlfriend, to his rural cabin, where McKinney shot him and stole several guns from him, then drove his van back to Lincoln. McKinney's theory was that others were responsible for the killing; specifically, Terri Fort, with whom McKinney alleged Kuenning had a relationship, and Joseph Walker, McKinney's former boyfriend.
McKinney's theory was bolstered by the fact that Fort and Walker stayed in a hotel in Lincoln shortly after the killing, and a gun registered to Kuenning that may have been the murder weapon was found in their room. But McKinney's fingerprints were found on a purse and a cigarette pack at Kuenning's cabin, and her DNA was found on several items in the cabin. McKinney admitted to stealing a .44 Magnum revolver from Kuenning, and according to one witness, she later exchanged a.44 Magnum revolver for crack cocaine. Fort testified that McKinney and Kuenning left Lincoln together on the evening of January 5, 1998, and that McKinney did not return until the next morning. Walker testified that McKinney told him that she had killed Kuenning and needed help disposing of some guns. And McKinney lied to police during their investigation into Kuenning's killing.
Based on that evidence, McKinney was convicted of first degree murder. But on direct appeal, we concluded that evidence of McKinney's DNA should not have been admitted.[2] We held that probable cause was required to take a DNA sample from McKinney, and the State had not challenged the district court's finding that at the time the sample was collected, police did not have probable cause to believe McKinney had committed the crime. We found, however, that when the evidence set forth above was considered, any error in admitting the DNA evidence was harmless.[3]
McKinney had also sought DNA samples in the original trial proceedings from Fort, Walker, and three others. McKinney's intent was to bolster her theory of the case by comparing the DNA samples she obtained to unknown DNA found at Kuenning's cabin. But the district court refused to issue the subpoenas McKinney requested, and on appeal, we found that the district court had not erred. We explained that the circumstances did not require invading the witnesses' constitutional rights.[4]
Accordingly, we affirmed McKinney's conviction and sentence and denied her motion for rehearing. McKinney then filed a motion for postconviction relief in the district court. McKinney alleged that we had violated her constitutional rights by finding harmless error in McKinney I, because the State had not argued that the error was harmless. McKinney also alleged that we had applied the wrong legal standards in evaluating whether the error was harmless. McKinney alleged that we had erred in holding that she had no right to obtain DNA samples from other potential *560 suspects. And she alleged ineffective assistance of counsel.
The district court rejected each of these contentions. The court found that we have the authority to raise harmless error sua sponte and that, in any event, the issue was procedurally barred. The court found that McKinney's other claims of error in McKinney I were procedurally barred. And the court found that McKinney was not prejudiced by the alleged ineffectiveness of her trial counsel. The district court dismissed McKinney's motion without an evidentiary hearing.

ASSIGNMENTS OF ERROR
McKinney assigns, restated, that the district court erred in (1) concluding that issues relating to our harmless error review in McKinney I were procedurally barred, (2) concluding that the issue relating to McKinney's attempt to obtain DNA samples from Fort and Walker was procedurally barred, and (3) refusing to conduct an evidentiary hearing on the effectiveness of McKinney's counsel.

STANDARD OF REVIEW
Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.[5]
A claim that defense counsel provided ineffective assistance presents a mixed question of law and fact. When reviewing a claim of ineffective assistance of counsel, an appellate court reviews the factual findings of the lower court for clear error. With regard to the questions of counsel's performance or prejudice to the defendant as part of the two-pronged test articulated in Strickland v. Washington,[6] an appellate court reviews such legal determinations independently of the lower court's decision.[7]

ANALYSIS
Before discussing McKinney's arguments in detail, it will be helpful to review some of the basic propositions of law that are applicable to cases of this kind. The Nebraska Postconviction Act[8] provides that postconviction relief is available to a prisoner in custody under sentence who seeks to be released on the ground that there was a denial or infringement of his constitutional rights such that the judgment was void or voidable.[9] But a motion for postconviction relief is not a substitute for an appeal.[10] So, a motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and could have been litigated on direct appealsuch issues are procedurally barred.[11]

HARMLESS ERROR IN McKINNEY I

McKinney's first assignment of error relates to our finding in McKinney I that the trial court's error in admitting evidence of *561 McKinney's DNA was harmless. McKinney's fundamental claim is that we erred in considering, sua sponte, whether the error was harmless. But first, she contends that the district court erred in concluding that her claim is procedurally barred.
The problem, according to McKinney, is that she was unaware of the possibility of harmless error until our opinion was issued, so her only means of arguing that we erred was in a motion for rehearing. And because we did not issue an opinion explaining our denial of McKinney's motion for rehearing, there is no way of knowing why we denied it. So, McKinney concludes, we may not have decided her motion for rehearing on the merits of her argument, and it is not procedurally barred.
The rule in that regard, however, is that a postconviction argument is not procedurally barred if it was raised on direct appeal, but neither expressly nor necessarily decided on the merits.[12] Our authority to consider harmless error sua sponte may not have been expressly discussed in our opinion or in denying McKinney's motion for rehearing. But it was necessarily decided, both in our denial of the motion for rehearing and implicitly with our finding of harmless error in McKinney I.[13]
And our decision was correct. It is well established that an appellate court has discretion to overlook the State's failure to argue that an error is harmless.[14] The unique function of the harmless error rule is to conserve judicial labor by holding harmless those errors which, in the context of the case, do not vitiate the right to a fair trial and, thus, do not require a new trial.[15] To preclude application of the test merely because the State failed to make the argument would elevate form over substance and hamper the goal of efficient use of judicial resources.[16] As the Seventh Circuit has explained,
while we are not required to scour a lengthy record on our own, with no guidance from the parties, for indications of harmlessness, we are authorized, for the sake of protecting third-party interests including such systemic interests as the avoidance of unnecessary court delay, to disregard a harmless error even though through some regrettable oversight harmlessness is not argued to us. If it is certain that the error did not affect the outcome, reversal will not help the party arguing for reversal beyond such undeserved benefits as he may derive from delay.... And reversal will hurt others: not merely the adverse party, whose failure to argue harmlessness forfeits his right to complain about the injury, but innocent third parties, in particular other users of the court system, whose access to that system is impaired by additional litigation.[17]
Those concerns are illustrated in this case. The case against McKinney was complex, and a retrial would have expended significant prosecutorial and judicial resources. *562 It would be inconsistent with our responsibilities to require the public to bear that expense when it is unnecessary to vindicate McKinney's right to a fair trial.
McKinney complains that her constitutional rights were violated because, according to her, she was not notified that harmless error was at issue. This, according to McKinney, denied her rights to counsel and due process of law. But McKinney could and did argue that the error was not harmless in her motion for rehearing. And whether an assigned error was prejudicial, requiring reversal, is at issue in every appeal.[18]
McKinney also argues that we erred in McKinney I by not applying the harmless error standard of Chapman v. California.[19] But we did apply Chapman. In Chapman, the U.S. Supreme Court explained that "[a]n error ... which possibly influenced the jury adversely to a litigant cannot ... be conceived of as harmless."[20] The Court explained that the question was "`whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction'" and held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."[21] And in McKinney I, we stated that
[i]n a jury trial of a criminal case, an erroneous evidentiary ruling results in prejudice to a defendant unless the State demonstrates that the error was harmless beyond a reasonable doubt. Harmless error exists when there is some incorrect conduct by the trial court which, on review of the entire record, did not materially influence the jury's verdict adversely to a defendant's substantial right. In a harmless error review, we look at the evidence upon which the jury rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the guilty verdict rendered in the trial was surely unattributable to the error.[22]
And consistent with those principles, in the end we concluded "from the entire record that the jury's verdict was surely unattributable to the erroneous admission of McKinney's DNA, and that error was therefore harmless."[23]
McKinney's Chapman argument may take issue, not with the propositions of law that we stated in McKinney I, but with our application of that law to the factsin other words, that our conclusion was wrong. And McKinney argues separately that our harmless error review was factually incorrect. Stated generally, she argues that the evidence we relied upon in our review was not persuasive or credible on several points.
These claims, however, are plainly procedurally barred. The remedy provided by the Nebraska Postconviction Act is cumulative and is not intended to be concurrent with any other remedy existing in the *563 courts of this state.[24] And the phrase "any other remedy" encompasses a direct appeal when the issue raised in the postconviction proceeding can be raised in the direct appeal.[25] Thus, a motion for postconviction relief cannot be used as a substitute for an appeal or to secure a further review of issues already litigated on direct appeal.[26]
Whether the erroneous admission of McKinney's DNA was actually harmless was, obviously, decided in McKinney I. The Nebraska Postconviction Act does not permit relitigation of issues that were expressly decided in a previous appeal. Therefore, we do not consider McKinney's attempt to challenge our reasoning in McKinney I. The purpose of affording postconviction relief is not to permit the defendant endless appeals on matters already decided.
In sum, we find no merit to McKinney's arguments regarding our harmless error review in McKinney I. The district court did not err in refusing to hold an evidentiary hearing on these arguments and finding them to be without merit.

AUTHORITY TO OBTAIN DNA SAMPLES FROM THIRD PARTIES
McKinney also takes issue with our conclusion in McKinney I that the trial court had not erred in denying her motion to obtain DNA samples. McKinney claims, contrary to our express conclusion in McKinney I, that this was the "`"rare instance"'" where justice required an invasion of a third party's constitutional rights.[27]
But obviously, we reached the opposite conclusion in McKinney I. And as explained above, the Nebraska Postconviction Act does not permit relitigation of issues that were expressly decided in a previous appeal. The district court did not err in finding this argument to be procedurally barred.

INEFFECTIVE ASSISTANCE OF COUNSEL
McKinney's final argument is that the district court should have held an evidentiary hearing on her allegations of ineffective assistance of counsel. These allegations are not procedurally barred, because McKinney was represented by the same counsel at trial and on direct appeal. Although a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, when a defendant was represented both at trial and on direct appeal by the same lawyer, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief.[28]
In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with Strickland v. Washington,[29] to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense in his or her case. In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. The two prongs of *564 this test, deficient performance and prejudice, may be addressed in either order.[30]
The only specific instance in which McKinney argues that her trial counsel was ineffective is in failing to object to a remark the State made during its closing statement. During closing, the State argued:
And we know that Lora McKinney was acting alone when she murdered Harold Kuenning. There wasn't any other DNA at this crime scene, any other fingerprint evidence that would suggest that anyone else was present at that cabin besides the defendant and the victim. And there's also very  one other very revealing fact. And as you can see, there are no fingerprints along the passenger's side of [Kuenning's] van. Members of the jury, there's not even a smudge. No one went with Lora McKinney and Harold Kuenning out to that cabin and the murderer left alone. No one went with her. No one got out of the passenger's side of that van when it came to its final resting place.
McKinney argues that trial counsel should have objected to the claim that there was not other DNA at the crime scene, because there was unidentified DNA foundthe DNA that formed the basis for McKinney's unsuccessful attempt to get DNA samples from Fort and Walker. And McKinney argues that an evidentiary hearing was necessary on this claim.
But we conclude, as did the district court, that McKinney was not prejudiced by counsel's failure to object. The objectionable remark was, when read in context, largely inconsequential. And more important, evidence had been presented of the unknown DNA found at the scene. Instead of objecting, McKinney's counsel used his closing statement to argue that the unknown DNA provided a basis for reasonable doubt. When the record is considered as a whole, there is no reasonable probability that the jury was misled by the State's misstatement during its closing statement.
An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution.[31] But an evidentiary hearing may be denied when the records and files affirmatively show that the defendant is entitled to no relief.[32] In this case, the record affirmatively demonstrates that McKinney was not prejudiced by trial counsel's failure to object to the State's closing statement.
McKinney also suggests, in passing, that she was denied effective assistance of counsel because her counsel on direct appeal did not argue that the erroneous admission of her DNA was not harmless. But McKinney was not prejudiced by the omission, because, as noted above, those arguments were presented in her motion for rehearing. And it is certainly not clear, given our review of the record in McKinney I, what her appellate counsel could have argued that would have affected our decision.
In short, we find no error in the district court's conclusion that McKinney was not prejudiced by the instances of ineffective assistance of counsel that she alleged.

*565 CONCLUSION
Each of McKinney's arguments is either procedurally barred or without merit. We affirm the district court's judgment denying her motion for postconviction relief.
AFFIRMED.
HEAVICAN, C.J., not participating.
NOTES
[1] See State v. McKinney, 273 Neb. 346, 730 N.W.2d 74 (2007).
[2] See id.
[3] See id.
[4] See id.
[5] State v. Thomas, 278 Neb. 248, 769 N.W.2d 357 (2009).
[6] Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[7] State v. Dunster, 278 Neb. 268, 769 N.W.2d 401 (2009).
[8] Neb.Rev.Stat. § 29-3001 et seq. (Reissue 2008).
[9] State v. York, 278 Neb. 306, 770 N.W.2d 614 (2009).
[10] State v. Gamez-Lira, 264 Neb. 96, 645 N.W.2d 562 (2002).
[11] See State v. Lotter, 278 Neb. 466, 771 N.W.2d 551 (2009).
[12] See State v. York, 273 Neb. 660, 731 N.W.2d 597 (2007).
[13] See id.
[14] See, e.g., U.S. v. McLaughlin, 126 F.3d 130 (3d Cir.1997); U.S. v. Rose, 104 F.3d 1408 (1st Cir.1997); U.S. v. Crowell, 60 F.3d 199 (5th Cir.1995); U.S. v. Langston, 970 F.2d 692 (10th Cir.1992); Lufkins v. Leapley, 965 F.2d 1477 (8th Cir.1992); U.S. v. Pryce, 938 F.2d 1343 (D.C.Cir.1991); U.S. v. Giovannetti, 928 F.2d 225 (7th Cir.1991); Randolph v. U.S., 882 A.2d 210 (D.C.2005); Heuss v. State, 687 So.2d 823 (Fla.1996).
[15] Heuss, supra note 14.
[16] Id.
[17] Giovannetti, supra note 14, 928 F.2d at 226 (citation omitted).
[18] See Neb.Rev.Stat. § 29-2308 (Reissue 2008).
[19] Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
[20] Id., 386 U.S. at 23-24, 87 S.Ct. 824. See, also, Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963).
[21] Chapman, supra note 19, 386 U.S. at 24, 87 S.Ct. 824, citing Fahy, supra note 20.
[22] McKinney I, supra note 1, 273 Neb. at 358-59, 730 N.W.2d at 87.
[23] Id. at 360, 730 N.W.2d at 88.
[24] § 29-3003.
[25] State v. Molina, 271 Neb. 488, 713 N.W.2d 412 (2006).
[26] See id.
[27] McKinney I, supra note 1, 273 Neb. at 362, 730 N.W.2d at 90.
[28] State v. Rhodes, 277 Neb. 316, 761 N.W.2d 907 (2009).
[29] Strickland, supra note 6.
[30] See State v. Glover, 278 Neb. 795, 774 N.W.2d 248 (2009).
[31] State v. McLeod, 274 Neb. 566, 741 N.W.2d 664 (2007).
[32] See id.