Justice W. JONES,
dissenting:
I would not lightly recommend that we send a man to the penitentiary for at least forty years, and possibly his entire life, where his trial was marred by error — and I fully join in that portion of the Majority’s Opinion holding that the district court erred by admitting Hust’s eyewitness identification, and erred again by limiting Dr. Reisberg’s testimony regarding the unduly suggestive police questioning that led to that identification. Moreover, I cannot understand the State’s inexplicable failure to brief the question of whether these two errors were harmless. This oversight ordinarily would preclude us from considering the issue of harmless error, because in most cases it would be unfair to decide this question without briefing and argument from counsel.
But, this is a unique case. Almaraz shot Flores in front of several eyewitnesses while being taped by a surveillance camera. Damning physical evidence also links him to the crime. If I believed a jury could possibly reach a different result in a new, error-free trial, I would not hesitate to join the Majority. But, I believe that in extraordinary eases like this one we have a duty to independently examine the record to determine whether all of the errors below were harmless, and, if they were, to affirm the defendant’s conviction.
Typically, in a criminal appeal the government must argue that the errors below were harmless; otherwise, it waives that issue. See Pizzuto v. State, 146 Idaho 720, 725, 202 P.3d 642, 647 (2008)(party must support contentions on appeal with argument and authority); State v. Ruiz, 150 Idaho 469, 471, 248 P.3d 720, 722 (2010) (declining to address harmless error issue because State did not argue that error was harmless); see also Miller v. Stovall, 641 F.Supp.2d 657, 665-66 (E.D.Mich.2009)(same). However, a vast body of authority has developed following United States v. Giovannetti, 928 F.2d 225 (7th Cir.1991) (per curiam), which held that such a waiver is not necessarily binding on an appellate court. See, e.g., Gover v. Perry, 698 F.3d 295, 299-301 (6th Cir.2012); United States v. Ford, 683 F.3d 761, 768-69 (7th Cir.2012); United States v. Ghane, 673 F.3d 771, 787-88 (8th Cir.2012); United States v. Davis, 596 F.3d 852, 861 (D.C.Cir.2010); United States v. Gonzalez-Flores, 418 F.3d 1093, 1101-02 (9th Cir.2005); United States v. Torrez-Ortega, 184 F.3d 1128, 1136 (10th Cir.1999); United States v. Rose, 104 F.3d 1408, 1414-15 (1st Cir.1997); United States v. Adams, 1 F.3d 1566, 1575-76 (11th Cir.1993); United States v. Vontsteen, 950 F.2d 1086, 1091-92 (5th Cir.1992) (en banc); People v. Casias, No. 09CA1745, — P.3d -, ---, 2012 WL 3793188, at *10-11 *605 (Colo.App. July 19, 2012); Randolph v. United States, 882 A.2d 210, 222-23 (D.C.2005); Edwards v. State, 925 A.2d 1281, 1285 (Del.2007); Goodwin v. State, 751 So.2d 537, 546 (Fla.1999); State v. McKinney, 279 Neb. 297, 777 N.W.2d 555, 561 (2010); Harlow v. State, 70 P.3d 179, 194-95 (Wyo.2003).
As originally articulated, the Giovannetti test includes three factors: (1) the length and complexity of the record, (2) the court’s certainty that the errors were harmless, and (3) the time and expense that a futile retrial would entail. See 928 F.2d at 227. The inquiry focuses primarily on the second factor. See United States v. Gonzalez-Flores, 418 F.3d 1093, 1101 (9th Cir.2005).[14] This approach appropriately accounts for the very real danger that attends any examination conducted without the benefit of adversarial briefing, while also interpreting Idaho’s harmless error rule[15] in a manner that eliminates “unjustifiable expense and delay.” I.C.R. 2; see also Heder v. United States, 521 U.S. 1, 18, 119 S.Ct. 1827, 1838, 144 L.Ed.2d 35, 52-53 (1999)(at some point, concern for method by which guilt is determined must yield to society’s interest in punishing criminals); United States v. Hasting, 461 U.S. 499, 508-09, 103 S.Ct. 1974, 1980-81, 76 L.Ed.2d 96, 105-06 (1983)(noting impossibility of securing perfect trials for criminal defendants); State v. Moore, 131 Idaho 814, 823, 965 P.2d 174, 183 (1998) (defendant has a constitutional right to a fair trial, not an error-free trial).
Admittedly, this Court has intimated that it will not examine sua sponte whether trial errors were harmless. See State v. Ruiz, 150 Idaho 469, 471, 248 P.3d 720, 722 (2010)(“The State has not argued that the error was harmless. Therefore, we vacate the judgment of conviction.”). Two terse sentences devoid of citations to authority is a questionable “holding” at best, and nothing indicates that this Court was then aware of the Giovannetti line of cases.
Although this Court has often stated that issues not briefed or argued by the parties are waived, which is a good rule in the run of eases, it is impractical to retry cases where all of the errors below were plainly harmless. Moreover, if we adopt the Giovannetti test, we will eliminate the risk that the State might strategically omit a harmless-error argument in an effort to force us to reach a decision on one of the substantive issues involved in a case. If we assert our discretionary power to examine the record for harmless error sua sponte, such gamesmanship will be unavailing. See United States v. Rose, 104 F.3d 1408, 1414-15 (1st Cir.1997) (noting that “the interest in avoiding incentives to the government to fail to make the proper arguments” is one reason to adopt the Giovannetti test).
Here, the record is not so long or complex that it would be overly burdensome for us to review it for harmless error, particularly because the parties identified and thoroughly argued the errors, but “simply failed to address [their] likely impact on the final result.” United States v. Pryce, 938 F.2d 1343, 1348 (D.C.Cir.1991). Nor were the errors interwoven with other aspects of the State’s case such that it would be difficult to evaluate their prejudicial effect. See United States v. Samaniego, 187 F.3d 1222, 1225 (10th Cir.1999). Rather, both of the errors require us to answer a straightforward question: would this case have come out differently without Hust’s eyewitness identification?
The answer clearly is “no.” The State presented a large amount of evidence that was redundant with Hust’s identification. Salazar and two other eyewitnesses testified that Almaraz shot Flores, and the bar’s surveillance video shows Almaraz crouching behind Flores at the instant Flores was shot in the back. Following the murder, police officers searching near the bar found a shirt *606 with Almaraz’s DNA on it, in which was wrapped a gun that ballistics tests matched to the bullet casings from the shooting. This comports with Salazar’s testimony that Almaraz told Salazar “I got him,” wrapped his shirt around his gun, and then threw it over some bushes. Even without Hust’s identification, the proof that Almaraz was the shooter is unassailable.
I am absolutely convinced that a jury will reconvict Almaraz if he is retried. The trial by jury is “one of the most sacred rights enjoyed by our people,” Russell v. Alt, 12 Idaho 789, 88 P. 416, 417 (1907), particularly in criminal eases, where one’s freedom or very life may be at stake, see Neder v. United States, 527 U.S. 1, 19, 119 S.Ct. 1827, 1838-39, 144 L.Ed.2d 35, 53 (1999). No one should be deprived of this sacred right out of mere concern for efficiency and expense. But, Almaraz has been fairly tried and found guilty, albeit with two errors that I believe far beyond a reasonable doubt had no effect on the guilty verdict. It has been held by the United States Supreme Court that a criminal defendant is entitled to a fair trial, not necessarily a perfect trial. Almaraz had a fair trial. I see no need to reverse his conviction in order to give him a second fair trial.
Justice J. JONES, concurs.

. One could well argue that the second “factor” is dispositive. If the record is long or complex, the court cannot be confident in its unguided determination of harmlessness. Therefore, the first factor is relevant only to the extent that it impacts the second factor. Moreover, time and expense can never justify depriving a defendant of a fair trial. Therefore, the third factor is relevant only if the second factor has already been established.

. "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.” I.C.R. 52.