IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ALSPAUGH

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CLARENCE E. ALSPAUGH, APPELLANT.

Filed March 22, 2016.    No. A-15-462.

Appeal from the District Court for Douglas County: THOMAS A. OTEPKA, Judge. Affirmed.

Clarence E. Alspaugh, pro se.

Douglas J. Peterson, Attorney General, and Melissa R. Vincent, for appellee.

MOORE, Chief Judge, and IRWIN and BISHOP, Judges.

BISHOP, Judge.

In October 2013, Clarence E. Alspaugh pleaded no contest to one count of criminal conspiracy to possess marijuana with intent to deliver; subsequently, he was sentenced to 15 to 17 years' imprisonment. After his direct appeal challenging his sentence was unsuccessful, he sought postconviction relief. The district court for Douglas County denied postconviction relief without an evidentiary hearing, and Alspaugh appeals. We affirm.

BACKGROUND

On December 31, 2012, the State charged Alspaugh in the county court for Douglas County with one count of conspiracy to possess marijuana with intent to deliver, a Class III felony. Neb. Rev. Stat. §§ 28-202 and 28-416 (Reissue 2008). The county court appointed an attorney for Alspaugh.

- 1 -

A preliminary hearing was conducted on January 16, 2013. The State's only witness was Officer Charles Moffitt of the Omaha, Nebraska, police department, who testified as follows. On December 28, 2012, Officer Moffitt participated in a narcotics investigation at the ABF Freight Company in Omaha. Another officer had received information concerning possible drugs located in one of the freight trailers that had arrived at the facility from California. Officer Moffitt "ran" his "certified canine" on three freight trailers, and the canine "indicated" on one of the trailers. Officer Moffitt learned that the contents of the freight trailer belonged to Michael Montgomery.

Officer Moffitt and another officer observed Montgomery arrive and begin to move objects inside the freight trailer. They then observed another individual arrive, later identified as Alspaugh. Alspaugh was driving a "truck with a camper on it and a box trailer." Alspaugh entered the freight trailer and met with Montgomery. At this point, Officer Moffitt and the other officer made contact with the two men, who denied consent to search the freight trailer. Based on the earlier canine "indication," the officers made the decision to search the freight trailer, which revealed 23 pounds of marijuana, "bagging material," and a scale located in an armoire next to a Harley Davidson motorcycle. According to Officer Moffitt, Montgomery claimed ownership of the drugs. Alspaugh told the officers he had arrived to help Montgomery "move property" and indicated the motorcycle was his.

Officer Moffitt testified that a search of Alspaugh's person revealed $1,700 in cash in "broken, small denominations consistent with drug amounts," as well as a cell phone. At an unspecified time, the officers searched the cell phone, which according to Officer Moffitt contained "[a] text to Mr. Montgomery about, 'Are we burnt?' about a half an hour or hour before he arrived on the scene with the trailer." After the officer was shown his police report, he clarified that "the exact quote of the text" was, "Hey, Spike, what's up? We burnt or what? Send it back if you can't move it, please. You know I trusted you. What the fuck? Tell me something." Based on his training and experience, Officer Moffitt believed the word "burnt" referenced being "found out" by law enforcement.

At the conclusion of the preliminary hearing, the county court found there was probable cause and bound the matter over to the district court for Douglas County. In the district court, Alspaugh filed a pro se plea in abatement pursuant to Neb. Rev. Stat. § 29-1809 (Reissue 2008), arguing there was insufficient evidence at the preliminary hearing to support a probable cause finding. Subsequently, Alspaugh's court-appointed attorney filed an identical plea in abatement on his behalf. Shortly thereafter, privately retained counsel filed an appearance on Alspaugh's behalf.

A hearing on Alspaugh's plea in abatement took place on July 9, 2013. The only evidence submitted was Alspaugh's exhibit 1, which was the transcript of the January 16 preliminary hearing. Alspaugh's privately retained attorney argued the State's evidence at the preliminary hearing was insufficient to establish probable cause. The court took the matter under advisement and on August 19 entered an order overruling Alspaugh's plea in abatement.

On October 8, 2013, pursuant to a plea agreement, Alspaugh pleaded no contest to conspiracy to possess marijuana with intent to deliver. In exchange for Alspaugh's plea, the State agreed not to file additional charges of "tax stamp violation" and possession of more than one pound of marijuana. In addition, the State agreed not to pursue a habitual criminal enhancement.

Prior to accepting Alspaugh's plea, the district court inquired into his competency, advised him of the nature of the charge against him and the potential punishments, and advised him of the rights he would waive if he pleaded guilty or no contest. The court also heard the State's factual basis for the plea, which was largely consistent with Officer Moffitt's testimony at the preliminary hearing. However, the factual basis indicated that the text message discovered on Alspaugh's cell phone that began, "Hey, Spike, what's up? We burnt or what?" was received on January 4, 2013, from a California phone number. While there appears to be inconsistency between the indication in the factual basis that the text message on Alspaugh's cell phone was received from a California phone number on January 4, 2013, and Officer Moffitt's testimony at the preliminary hearing that a text message was sent "to Mr. Montgomery" on December 28, 2012, any inconsistency will be addressed later in our opinion.

In addition, the factual basis included a summary of the State's "proffer interview" of Montgomery on May 14, 2013. During the interview, Montgomery indicated he had met Alspaugh while the two men were incarcerated in California. According to Montgomery, the men had successfully completed a prior drug transaction involving five pounds of marijuana. Following that transaction, the men arranged for Montgomery to "round[] up as much weed as he could get out of the state of California" and ship it to Nebraska. Montgomery did not know anyone in Nebraska, and the plan was to sell the marijuana to Alspaugh's clients. Another part of the deal was that Montgomery would ship Alspaugh's Harley Davidson motorcycle with the drugs; Montgomery had the motorcycle in California as collateral for a drug-related debt. Once enough marijuana was sold to pay Alspaugh's debt, Alspaugh would receive the motorcycle. According to the factual basis, Alspaugh went by the name "Spike," and some of the marijuana on the trailer was marked with an "S" for him.

After hearing the factual basis, the court found that Alspaugh's plea was freely, knowingly, and intelligently given and that the factual basis was sufficient for a finding of guilt. On November 25, 2013, the court sentenced Alspaugh to 15 to 17 years' imprisonment, based in part on Alspaugh's extensive drug-related criminal history, which included several felony convictions and incarcerations between 1989 and 2004.

Alspaugh appealed to this court, challenging his sentence as excessive. On March 31, 2014, in *State v. Alspaugh*, No. A-13-1129, this court summarily affirmed the judgment on the State's motion.

On March 16, 2015, Alspaugh filed in the district court a "Verified Motion to Vacate and Set Aside Conviction and Sentence" pursuant to Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2008 & Cum. Supp. 2014). He alleged six claims: (1) ineffective assistance of court-appointed counsel at the preliminary hearing; (2) ineffective assistance of Alspaugh's privately retained counsel at the plea-in-abatement hearing; (3) ineffective assistance of both attorneys at "all pretrial stages of representation"; (4) ineffective assistance of court-appointed counsel on direct appeal, in that counsel failed to assign as error the privately retained attorney's deficient performance; (5) ineffective assistance of privately retained counsel on direct appeal, in that counsel failed to assign as error the court-appointed attorney's deficient performance; and (6) ineffective assistance of privately retained counsel on direct appeal, in that counsel failed to assign as error the denial of the plea in abatement and the disparity in sentencing between Alspaugh and Montgomery.

The thrust of Alspaugh's argument in support of his first two postconviction claims was that his attorneys were ineffective at the preliminary and plea-in-abatement hearings because they failed to challenge Officer Moffitt's "outright fraud" and "deliberate act of deception" when testifying about the text message discovered on Alspaugh's cell phone. According to Alspaugh, had his attorneys challenged the "fraudulent text message," which was a "complete fabrication," they would have "rebutted the presumption of probable cause and would have created a reasonable probability that the prosecution against [him] would have been terminated."

In support of his third claim, Alspaugh argued his attorneys failed to advise him that he could seek suppression of the evidence. Alspaugh did not offer any argument in support of his fourth, fifth, and sixth postconviction claims, which were simply asserted in the form of headings. Alspaugh concluded his postconviction motion by alleging he would not have pleaded no contest but for his attorneys' ineffective assistance.

The court ordered the State to file a written response, which it did, arguing Alspaugh's claims either were procedurally barred or consisted of unsupported conclusions of fact and law.

On May 6, 2015, the district court entered an order overruling Alspaugh's motion for postconviction relief without an evidentiary hearing. The court noted that while ordinarily some of Alspaugh's claims of ineffective assistance of counsel would be procedurally barred because they could have been raised on direct appeal, the court would not apply any procedural bar, given that Alspaugh's original court-appointed counsel never withdrew his appearance after Alspaugh hired a private attorney, who represented Alspaugh through the conclusion of his direct appeal. The court then denied all of Alspaugh's postconviction claims. It reasoned that the first two claims failed because counsel could not be ineffective for failing to raise a meritless argument; the court also noted that any errors in the preliminary hearing "were resolved" when the State provided a factual basis that was sufficient for a finding of guilt. The court reasoned that Alspaugh failed to allege any facts supporting his remaining four claims.

Alspaugh timely appealed to this court.

## ASSIGNMENTS OF ERROR

Alspaugh assigns that the district court erred when it (1) denied his motion for postconviction relief; (2) found that his court-appointed counsel was not ineffective for failing to challenge the evidence at the preliminary hearing; (3) found that fabricated evidence could not be challenged at the preliminary hearing; (4) found that the State's factual basis resolved any issues regarding the preliminary hearing; (5) found that his privately retained counsel was not ineffective at the plea-in-abatement hearing; (6) found that his privately retained counsel was not ineffective for failing to file pretrial motions, including "suppression and deposition motions"; (7) found that both of his attorneys were not ineffective for failing to raise on appeal the claims presented in his postconviction motion; and (8) found that he had not alleged sufficient facts to warrant an evidentiary hearing on his postconviction motion.

## STANDARD OF REVIEW

In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his

or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief. *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015).

The issue of whether a postconviction claim is procedurally barred is a question of law, regarding which an appellate court reaches a conclusion independent of the lower court's ruling. *State v. Boppre*, 280 Neb. 774, 790 N.W.2d 417 (2010).

ANALYSIS

We first address whether any of Alspaugh's postconviction claims are procedurally barred. Normally, a voluntary guilty plea waives all defenses to a criminal charge. *State v. Yos-Chiguil*, 281 Neb. 618, 798 N.W.2d 832 (2011). However, where, as here, a defendant brings a postconviction action following a guilty plea or a plea of no contest, a court will consider an allegation that the plea was the result of ineffective assistance of counsel. *Id*. Thus, Alspaugh's plea is not a barrier to his postconviction claims, all of which allege that Alspaugh would not have pleaded no contest but for his attorneys' ineffective assistance.

However, a motion for postconviction relief generally cannot be used to secure review of issues that were or could have been litigated on direct appeal. *State v. McKinney*, 279 Neb. 297, 777 N.W.2d 555 (2010). An exception to this rule applies when a defendant was represented both at trial and on direct appeal by the same lawyer, since the defendant's first opportunity to assert ineffective assistance of counsel is in a postconviction action. *Id*. Here, as the district court pointed out, after Alspaugh retained a private attorney, his original court-appointed attorney never withdrew his appearance. Thus, both attorneys remained Alspaugh's counsel of record through the completion of his direct appeal (the docket sheet for Alspaugh's direct appeal lists both attorneys as his counsel). Under these circumstances, we agree with the district court that it would not be appropriate to treat any of Alspaugh's postconviction ineffective-assistance-of-counsel claims as procedurally barred. Notably, the State agrees there is no procedural bar under these circumstances.

We now summarize the law governing the merits of Alspaugh's postconviction claims. To establish a right to postconviction relief based on a claim of ineffective assistance of counsel at trial or on direct appeal, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law in the area. *State v. Dunster*, 278 Neb. 268, 769 N.W.2d 401 (2009). In addition, the defendant must show prejudice, which requires demonstrating a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Yos-Chiguil, supra*. In the plea context, the defendant must show there is a reasonable probability that, but for counsel's errors, he or she would not have pleaded guilty or no contest and would have insisted on going to trial. *Id*.

In this case, the district court denied Alspaugh's postconviction claims without an evidentiary hearing. An evidentiary hearing on a motion for postconviction relief must be granted when the motion contains factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015). However, if the motion alleges only conclusions of fact or law, or the records

and files in the case affirmatively show that the movant is entitled to no relief, no evidentiary hearing is required. *Id.*

While Alspaugh's assignments of error touch on all of the claims in his motion for postconviction relief, his arguments on appeal predominately concern his first two postconviction claims. According to Alspaugh, in those claims, he sufficiently alleged (1) that court-appointed counsel was ineffective at the preliminary hearing because he failed to challenge "Officer Moffitt's on-stand perjury regarding the text message that was critical to the . . . probable cause finding," brief for appellant at 4, and (2) that his privately retained counsel was ineffective at the plea-in-abatement hearing because he also failed to challenge the text message testimony. As stated, the district court determined these claims did not require an evidentiary hearing, because counsel could not have been ineffective for failing to raise a meritless argument, and because any errors "were resolved" when the State provided a factual basis sufficient to support a finding of guilt.

The purpose of a preliminary hearing is to ascertain whether a crime was committed and whether there is probable cause to believe the accused committed it. Neb. Rev. Stat. § 29-506 (Reissue 2008); *State v. Nesbitt*, 264 Neb. 612, 650 N.W.2d 766 (2002). The preliminary hearing is not a trial to determine a person's guilt or innocence, but is a procedural safeguard to prevent a person from being detained in custody without probable cause existing that the crime charged was committed by that person. *State v. Hill*, 255 Neb. 173, 583 N.W.2d 20 (1998).

Here, Alspaugh was charged with conspiracy to possess marijuana with intent to deliver. A person is guilty of criminal conspiracy if he or she intends to promote or facilitate the commission of a felony, agrees with one or more persons to commit that felony, and then the person, or a coconspirator, commits an overt act furthering the conspiracy. § 28-202; *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013). Possession with intent to deliver marijuana is a Class III felony. § 28-416(1), (2)(b).

We conclude that the record before us affirmatively shows that Alspaugh is not entitled to relief on his first two postconviction claims. The thrust of those claims is that Alspaugh's attorneys should have challenged Officer Moffitt's "fabricated" testimony concerning the text message; Alspaugh contends such a challenge would have avoided a probable cause finding and, consequently, his plea. However, the record refutes his allegations that his counsel's performance was deficient and that he was prejudiced by the alleged deficiencies.

Officer Moffitt testified at the preliminary hearing that a text message stating "Are we burnt?" was sent "to Mr. Montgomery" about half an hour to an hour prior to Alspaugh's arrival at the freight trailer on December 28, 2012. After he was shown his police report, he clarified that "the exact quote of the text" was, "Hey, Spike, what's up? We burnt or what? Send it back if you can't move it, please. You know I trusted you. What the fuck? Tell me something." The State's factual basis indicated the text message that began, "Hey, Spike, what's up? We burnt or what?" was received on Alspaugh's cell phone from a California phone number on January 4, 2013, several days after Alspaugh's arrest.

Assuming that Officer Moffitt's testimony concerning the text message sent "to Mr. Montgomery" shortly before Alspaugh's arrival at the freight trailer referenced the same text message that began, "Hey, Spike, what's up? We burnt or what?," there are obvious

inconsistencies between the officer's testimony and the State's factual basis. However, contrary to Alspaugh's argument, the inconsistencies would not have changed the result of the preliminary hearing or the plea-in-abatement hearing had they been exposed by Alspaugh's counsel. Whether the text message was sent from Alspaugh's cell phone to Montgomery on December 28, 2012, or was received on Alspaugh's cell phone from a California phone number on January 4, 2013, it supported the court's probable cause finding, because it suggested Alspaugh was engaged in a conspiracy to distribute marijuana. In other words, the timing of the text message was not critical to the existence of probable cause. While exposure of the inconsistency might have affected witness credibility regarding this evidence, this would not have changed the outcome of the hearing, especially in light of the other evidence the State presented at the preliminary hearing.

Even overlooking the inconsistencies surrounding the text message, the other evidence at the preliminary hearing was sufficient to support the court's probable cause finding. The evidence showed that Alspaugh arrived at the freight trailer shortly after Montgomery with a truck towing a "box trailer." Alspaugh entered the freight trailer and met with Montgomery. After a search of the freight trailer revealed 23 pounds of marijuana, "bagging material," and a scale, a search of Alspaugh's person revealed $1,700 in cash in "broken, small denominations consistent with drug amounts." Based on Officer Moffitt's training and experience in narcotics investigations, he believed the quantity of marijuana in the trailer, as well as the large amount of cash in small denominations, was evidence of the distribution of drugs. Regardless of whether the evidence was sufficient to prove Alspaugh's guilt beyond a reasonable doubt, it was sufficient to support a probable cause finding. See *State v. Hansen*, 252 Neb. 489, 500, 562 N.W.2d 840, 849 (1997) ("circumstantial evidence may establish the existence of a conspiracy or the criminal intent necessary for a conspiracy").

We also note that Alspaugh alleged in his verified motion for postconviction relief that he knew of Officer Moffitt's "fabrication" concerning the text message at time of the preliminary hearing and the hearing on the plea in abatement. Given that Alspaugh knew of the "fabrication," yet still pleaded no contest to the conspiracy charge, it is difficult to see how his plea resulted from his attorneys' failure to challenge the testimony. If anything, the circumstances suggest Alspaugh was aware of his attorneys' alleged deficient performance, and pleaded no contest in spite of it, not because of it.

Alspaugh's remaining arguments consist of various undeveloped assertions, which we will address despite the absence of supporting analysis. Alspaugh asserts his privately retained counsel was ineffective by failing "to challenge the State's introduction of alleged new evidence" at the plea-in-abatement hearing, brief for appellant at 7; however, there is no indication in the record that the State presented new evidence at the hearing. Alspaugh also asserts that his privately retained counsel "was further deficient in not deposing the State's witnesses where he could have revealed the County Attorney's malicious prosecution and fraud in order to get a conviction," *id*. at 10; however, Alspaugh has alleged no facts to support such a claim.

Alspaugh also asserts that the district court erred when it found that his counsel was not ineffective on direct appeal by failing to raise "a claim of disparity in sentencing between [Alspaugh] and his codefendant," *id*. at 11. It is unclear how any alleged "disparity" in sentencing would have altered the outcome of the direct appeal; as the State points out, sentencing is an

individualized endeavor. See *State v. Guida*, 230 Neb. 961, 434 N.W.2d 522 (1989) (the mere fact that a defendant's sentence differs from those which have been issued to codefendants does not make the imposition of defendant's sentence an abuse of discretion). In this case, Alspaugh's sentence was based in large part on his extensive drug-related criminal history.

Finally, Alspaugh asserts "he would not have entered into a plea agreement with the State but for coercion of an [sic] habitual offender charge and the threat of prosecution with fraudulent and factually inmaterial [sic] evidence." Brief for appellant at 11. However, this claim was not raised in Alspaugh's postconviction motion and will not be addressed on appeal. See *State v. Dixon*, 237 Neb. 630, 467 N.W.2d 397 (1991) (declining to address issues on appeal where the issues were not raised in a postconviction motion or during the hearing on the motion).

CONCLUSION

For the foregoing reasons, we affirm the judgment of the district court for Douglas County.
AFFIRMED.