IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

STATE V. GOODWIN

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

JORDAN M. GOODWIN, APPELLANT.

Filed June 14, 2016.    No. A-15-666.

Appeal from the District Court for Douglas County: J RUSSELL DERR, Judge. Affirmed.

Jordan M. Goodwin, pro se.

Douglas J. Peterson, Attorney General, and Erin E. Tangeman for appellee

PIRTLE, RIEDMANN, and BISHOP, Judges.

PIRTLE, Judge.

### INTRODUCTION

Jordan M. Goodwin appeals from an order of the district court for Douglas County which denied his motion for postconviction relief following an evidentiary hearing. Based on the reasons that follow, we affirm.

### BACKGROUND

The State filed an information charging Goodwin with first degree murder and use of a firearm in the commission of a felony. Following a jury trial, Goodwin was convicted of second degree murder and use of a firearm in the commission of a felony and subsequently sentenced. He appealed his conviction and the Nebraska Supreme Court affirmed. See *State v. Goodwin*, 278 Neb. 945, 774 N.W.2d 733 (2009). He subsequently filed a motion for postconviction relief, which the trial court denied following an evidentiary hearing.

The facts of Goodwin's case, as summarized by the Supreme Court, are as follows:

> After giving a statement to police in which he admitted firing shots which killed a 6-year-old girl, Jordan M. Goodwin was charged in the district court for Douglas County with first degree murder and use of a firearm in the commission of a felony. Goodwin was 14 years 3 months of age at the time of the shooting. The district court denied Goodwin's motion to transfer his case to juvenile court and Goodwin's motion to suppress a statement he gave to police. Goodwin was tried before a jury. His defense was that he fired the fatal shots, but that he did so without the intent to kill and was therefore guilty only of manslaughter. After the jury received a step instruction which permitted it to find Goodwin guilty of first degree murder, guilty of second degree murder, guilty of manslaughter, or not guilty, the jury returned a verdict of guilty of second degree murder. The jury also found Goodwin guilty of the related weapons charge. The court entered judgment on the convictions and sentenced Goodwin to 50 to 50 years' imprisonment on the second degree murder conviction and to a consecutive term of 10 to 10 years' imprisonment on the weapons charge, with credit given for time served.

> . . . .

> Earlier in the afternoon of the shooting [on October 5, 2007], Goodwin was involved in an argument with Maya Mack in the presence of several other persons who were gathered in a garage near Mack's home. At one point during the argument, Goodwin pointed a handgun in Mack's direction. Mack told him not to point the gun at her unless he planned to use it, and a witness to the argument told Mack not to worry because the gun was not loaded. Mack then threw a container of spray paint at Goodwin. After Mack left the gathering, Goodwin told another person who was present that he needed ammunition for the handgun.

Later that afternoon, Mack was driven by her stepsister, Alexis Holford, to a home located in Mack's neighborhood for the purpose of buying marijuana. Mack's friend Brianna Russ and 6-year-old Alazia Alford were also passengers in the vehicle driven by Holford. As Holford's vehicle arrived, a vehicle driven by Michael Coleman, in which Goodwin and another person were passengers, pulled out of a parking space behind the house and parked nearby. Holford parked in the vacated parking space, and Mack and Russ exited the vehicle and began walking toward the rear entrance of the house. As she walked, Mack shouted something to Goodwin and Coleman, who were still in their vehicle. Moments later, Mack and Russ heard gunfire, and Mack turned to see Goodwin standing outside the vehicle and shooting at them. Both women were struck by gunshots, Russ in the left leg and Mack in the left arm. Neither was seriously injured. Holford, who was still seated in the vehicle, also observed Goodwin shooting. Immediately after the shots were fired, Coleman and Goodwin left the scene in the vehicle driven by Coleman.

At least two of the shots fired by Goodwin entered the rear window of the vehicle which Mack and Russ had exited, striking and killing Alford. The record generally reflects that Goodwin did not know that Alford was in the vehicle at the time of the shooting. Before giving her own statement to police, Russ called Goodwin and informed him that he had "killed the little girl." He responded that he had not intended to do so. *State v. Goodwin*, 278 Neb. 945, 947-949, 774 N.W.2d 733, 737-738.

Goodwin filed a pro se motion for postconviction relief on August 20, 2012. An amended motion was filed after Goodwin was appointed an attorney. Goodwin's allegations included that the court erred in giving jury instruction No. 4 and that his trial counsel was ineffective for failing to object to jury instruction No. 4 because the instruction failed to define "unlawful act" in regard to manslaughter.

The trial court held an evidentiary hearing on Goodwin's amended motion for postconviction relief. Depositions of Goodwin and his counsel were entered into evidence and the court took judicial notice of the bill of exceptions from the trial and the court file, which included the jury instructions given at trial.

Following the evidentiary hearing, the trial court denied postconviction relief, finding Goodwin's claims to be without merit. The trial court found that "unlawful act" was adequately defined in jury instruction No. 7 and that even if there was error with regard to the manslaughter instruction, Goodwin could not have been prejudiced because he was convicted of second degree murder and pursuant to the step instruction, the jury never reached the manslaughter instruction during their deliberations.

## ASSIGNMENTS OF ERROR

Goodwin assigns that (1) he was prejudiced adversely by jury instruction No. 4 not being properly explained regarding the elements of manslaughter, and (2) his trial counsel was ineffective for failing to object to jury instruction No. 4 and for failing to poll the jury to discover if the verdict was unanimous.

## STANDARD OF REVIEW

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Crawford*, 291 Neb. 362, 865 N.W.2d 360 (2015). In contrast, the appellate court independently resolves questions of law. *State v. Armstrong*, 290 Neb. 991, 863 N.W.2d 449 (2015).

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant must show that his or her counsel's performance was deficient and that this deficient performance actually prejudiced the defendant's defense. *State v. Armstrong, supra.* Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact. *Id.* Findings of fact include the circumstances of the case and the counsel's conduct and strategy. *Id.* It is a question of law, however, whether those facts show counsel's performance was deficient and prejudiced the defendant. *Id.*

## ANALYSIS

*Jury Instruction No. 4.*

Under his first assignment of error, Goodwin argues that he was prejudiced by the trial court's use of instruction No. 4 because it failed to adequately define "unlawful act" in regard to manslaughter. Goodwin did not raise this alleged error on direct appeal, so it is procedurally barred. A motion for postconviction relief cannot be used to secure review of issues which were or could

have been litigated on direct appeal, no matter how those issues may be phrased or rephrased. *State v. Thorpe*, 290 Neb. 149, 858 N.W.2d 880 (2015).

However, Goodwin also assigns that his trial counsel was ineffective in failing to object to instruction No. 4 on the ground that it failed to adequately define "unlawful act." Goodwin did not allege ineffective assistance of counsel on direct appeal, but he was represented by the same counsel at trial and on direct appeal. Although a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, when a defendant was represented both at trial and on direct appeal by the same lawyer, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief. *State v. McKinney*, 279 Neb. 297, 777 N.W.2d 555 (2010). Accordingly, Goodwin's allegation of ineffective assistance of counsel is not procedurally barred.

To establish a right to postconviction relief because of counsel's ineffective assistance, the defendant has the burden, under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984) to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015). Next, the defendant must show that counsel's deficient performance prejudiced the defense in his or her case. *Id.* To show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* A court may address the two prongs of this test, deficient performance and prejudice, in either order. *Id.*

The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable. *State v. Branch*, 290 Neb. 523, 860 N.W.2d 712 (2015). Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Meduna*, 18 Neb. App. 818, 794 N.W.2d 160 (2011).

Goodwin claims that jury instruction No. 4 was prejudicial and that his counsel should have objected to the instruction. Instruction No. 4 was a step instruction which told the jury that count I of the information charged Goodwin with first degree murder and informed them that under this count it could find Goodwin (1) guilty of first degree murder, (2) guilty of second degree murder, (3) guilty of manslaughter, or (4) not guilty. The jury instruction set out the material elements the State needed to prove beyond a reasonable doubt in order to convict Goodwin of first degree murder, e.g., an intentional killing done purposely with deliberate and premeditated malice. It then stated:

> If you find from the evidence beyond a reasonable doubt that each of the foregoing material elements . . . is true, it is your duty to find [Goodwin] guilty of the crime of murder in the first degree done purposely and with deliberate and premeditated malice, and you shall so indicate by your verdict.
>
> If, on the other hand, you find that the State has failed to prove beyond a reasonable doubt any one or more of the material elements . . . it is your duty to find [Goodwin] not guilty of the crime of murder in the first degree. You shall then proceed to consider the lesser-included offense of murder in the second degree. . . .

The instruction then set forth the material elements of second degree murder, e.g., an intentional killing without premeditation. It then stated:

The State has the burden of proving beyond a reasonable doubt each and every one of the foregoing material elements for conviction of the crime of murder in the second degree.

If you find from the evidence beyond a reasonable doubt that each of the foregoing material elements . . . is true, it is your duty to find [Goodwin] guilty of the crime of murder in the second degree done intentionally but without premeditation, and you shall so indicate by your verdict.

If, on the other hand, you find that the State has failed to prove any one or more of the material elements . . . it is your duty to find [Goodwin] not guilty of the crime of murder in the second degree. You shall then proceed to consider the lesser-included offense of manslaughter set out in Section III.

Section III of jury instruction No. 4 set forth the material elements for manslaughter:

1. That [Goodwin], on or about October 5, 2007, did kill Alazia Alford;
2. That he did so in Douglas County, Nebraska; and
3. That he did so without malice, either:
a. upon a sudden quarrel, or
b. unintentionally while in the commission of an unlawful act.

Goodwin argues that jury instruction No. 4 was inadequate and prejudiced him because it did not define "unlawful act." It is true that jury instruction No. 4 did not define "unlawful act." However, another jury instruction did. Jury instruction No. 7 provided definitions for various terms, including the following:

"Assault" is injuring another person intentionally, knowingly, or recklessly or threatening another person in a menacing manner.

"Unlawful Act" includes an assault as defined in this instruction.

Jury instruction No. 7 also defined the relevant terms set forth in the assault definition, specifically, "intentionally," "knowingly," and "recklessly."

The jury was further instructed, in jury instruction No. 1, that no attempt had been made to embody all the applicable law in any one instruction and that therefore, each instruction should be considered in light of all the others.

In an appeal based on a claim of an erroneous jury instruction, the appellant has the burden to show that the questioned instruction was prejudicial or otherwise adversely affected a substantial right of the appellant. *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016). Instruction No. 4 was not prejudicial to Goodwin because although "unlawful act" was not defined in the elements instruction, the unlawful act relevant to the manslaughter instruction was defined in instruction No. 7. The jury was instructed that "unlawful act" includes an assault and the jury was given the definition of assault. Although the definition of "unlawful act" was not included in instruction No. 4, the jury was instructed that each instruction should be considered in light of all the others. It is well established that all the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal. See *State v. Hinrichsen, supra*. The jury instructions included a definition of "unlawful act" and when all the

instructions were considered together, they adequately set forth the elements of manslaughter. Accordingly, jury instruction No. 4 was not prejudicial and Goodwin's counsel was not ineffective for failing to object to jury instruction No. 4. See *State v. Meduna*, 18 Neb. App. 818, 794 N.W.2d 160 (2011) (Defense counsel is not ineffective for failing to raise an argument that has no merit).

In addition, as the trial court found, even if we were to conclude that there was error with regard to jury instruction No. 4, Goodwin still cannot show that he was prejudiced by the error. Jury instruction No. 4 was a step instruction in which the jury was instructed to separately consider, in the following order, the crimes of first degree murder, second degree murder, and manslaughter. The jury convicted Goodwin of second degree murder under a properly administered step instruction. Therefore, the jury necessarily rejected Goodwin's claim that he killed Alazia Alford unintentionally while in the commission of an unlawful act because it found that the State had proved beyond a reasonable doubt that he intended to commit the murder. Thus, any potential error in the instructions regarding manslaughter was not prejudicial because the jury never reached the manslaughter instruction during their deliberations.

There is no merit to Goodwin's contention that he was prejudiced by the use of jury instruction No. 4. Accordingly, Goodwin cannot show that his counsel's failure to object to the instruction was deficient or that it prejudiced the defense in his case. Therefore, Goodwin's counsel was not ineffective.

*Failure to Poll Jury.*

Goodwin also argues that trial counsel was ineffective for failing to poll the jury to discover if the verdict was unanimous. This claim, however, was not presented to the district court and therefore, cannot be raised for the first time on appeal. See *State v. Sellers*, 290 Neb. 18, 858 N.W.2d 577 (2015) (in a postconviction motion, an appellate court will not consider as an assignment of error a claim that was not presented to the district court).

CONCLUSION

We conclude that Goodwin's trial counsel was not ineffective in failing to object to jury instruction No. 4 and that we need not consider his claim that his trial counsel was ineffective for failing to poll the jury. The order of the district court denying Goodwin's motion for postconviction relief is affirmed.

AFFIRMED.